Filed 8/6/12

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

        Plaintiff and Respondent,

        v.

BARRY ALLEN TURNAGE,

        Defendant and Appellant.

_____

S182598

Ct.App. 3 C059887

Yolo County Super. Ct.
Nos. 06-5019, 04-1665

Defendant Barry Allen Turnage, an ex-felon on probation, planted an object near a government building that resembled a bomb (but lacked explosive content), and that caused fear and disruption when discovered. Defendant was convicted, as charged, of one felony count of violating Penal Code[1] section 148.1, subdivision (d) (section 148.1(d) or the false bomb statute). As pertinent here, section 148.1(d) allows felony or misdemeanor punishment for anyone who maliciously places "any false or facsimile bomb" with the intent to cause another person to fear for his own safety or the safety of others. Defendant's sentence included a 25-years-to-life Three Strikes term based on the section 148.1(d) felony count and his prior serious and violent felony convictions.

---

[1] All further statutory references are to the Penal Code except as otherwise stated.

1

On appeal, defendant claimed that the felony provision under which he was convicted and sentenced denied him equal protection of the law when compared to an entirely different statute, section 11418.1. The latter provision provides, in pertinent part, that anyone who places "any false or facsimile of a weapon of mass destruction" (WMD) with the intent to cause fear in others is guilty of a misdemeanor. A violation of section 11418.1 (or the false WMD statute) may be punished as a felony only "[i]f the [perpetrator's] conduct causes another person to be placed in sustained fear" — an element not necessary under the false bomb statute for either misdemeanor or felony punishment. The Court of Appeal accepted defendant's claim that, under the least exacting form of equal protection review, there was no rational basis for the distinction between the two crimes. The court reduced the section 148.1(d) conviction to a misdemeanor, and invalidated the related indeterminate life term.

We agree with the Attorney General, who sought review for the People, that no equal protection violation occurred. The challenged distinction — allowing false bomb crimes to be punished as felonies without proof of sustained fear, while requiring such a showing for felony violations of the false WMD statute — is not irrational. The Legislature could reasonably assume that the public is highly familiar with, and uniquely afraid of, the explosive properties of bombs. Hence, mere observation or awareness of an object that looks like a bomb, and that was meant to instill fear like a bomb, is almost certain to cause the alarm and disorder associated with sustained fear under the statutory scheme.

Upon close examination, the same reasoning does not apply to false WMD's. A WMD is statutorily defined to include a vast array of chemical and biological substances, and radioactive and mechanical devices, weaponized for use in both conventional and unconventional forms against all kinds of targets, not just people. It is conceivable from a legislative perspective that, given the breadth and

2

relative novelty of WMD's, a facsimile of a WMD would not *necessarily* be recognized or cause fear, even where it is detected and was intended to do so. Requiring sustained fear for felony offenses under the false WMD statute, but not the false bomb statute, promotes a valid state interest in deterring and punishing the societal harm such crimes clearly cause. We will reverse the Court of Appeal.

## I. FACTS

The relevant events occurred at the Yolo County communications center (Center), which dispatched calls 24 hours a day for the police and fire departments. The Center sits in the middle of a city block, in a secure, fenced area that can be entered only by activating a keypad at the gate.

At 9:30 a.m. on September 3, 2006, Tammy Leggins returned to work at the Center after a brief errand. As she drove down the driveway toward the keypad, she passed defendant, who was backing up in his car. Her suspicions were aroused when defendant leaned away and hid his face.

While waiting for the gate to open, Leggins looked down and saw an object on the concrete block directly underneath the keypad. It was a box with "C-4" written on two sides, including the side facing Leggins. A small American flag on a stick protruded upright from the top of the box.

Leggins knew C-4 was an explosive. Hence, her immediate reaction was that the box might be a bomb. She was frightened as a result.

Inside the Center, Leggins announced to the entire dispatch room that "we have a bomb threat." The police were called. Consistent with official protocol, this call was made by telephone instead of radio, because radio transmissions can detonate bombs. Leggins went outside when the police arrived 15 minutes later.

3

Apparently, she and her coworkers could leave the building during this time only through one circuitous route.[2]

A short time later, police found and arrested defendant at a nearby coffee shop. Defendant admitted that he left the box at the Center (which he called the "sheriff's department"), and that "C-4" referred to plastic explosives. Defendant said the box was a harmless joke, but also noted that unnamed women at the Center had mocked him.

Arresting officers found a disposable camera on defendant's person, which he admitted having used to photograph government buildings. He also possessed a sketch of a box with an antenna protruding from it. Later, while searching defendant's home and car, police seized over 200 photographs, including some developed from the film in additional disposable cameras. These pictures showed, among other things, the courthouse, the district attorney's office parking lot, police and fire stations, the probation office, and other county facilities.[3]

Meanwhile, the police established a safety perimeter around the Center. The bomb squad also arrived, including its commander, William Concolino. Qualifying as a bomb expert at trial, Concolino testified that C-4, or Composition C-4, is an exceptionally powerful and "hot" explosive used mainly for military and law enforcement purposes. Because of the "C-4" lettering, the box was not

---

[2] The record is unclear as to who left the Center because of the bomb threat. The Court of Appeal assumed that only Leggins did so. The People disputed this factual assertion in a petition for rehearing and modification denied by the Court of Appeal. The People have consistently claimed that the Center was evacuated.

[3] The prosecution also presented testimony from a county employee who often saw defendant near the Center. A few days before the bomb threat, she saw him aim an imaginary rifle at a social services building. She contacted the police.

touched or moved until X-rays and visual inspection showed that it contained no explosive device or material.[4]  Also, the flag on the box was not an antenna.

As to guilt of the charged crime,[5] the jury convicted defendant of one felony count of placing a false or facsimile bomb in violation of section 148.1(d). The same jury determined in subsequent phases of the trial that defendant was legally sane, and that he had sustained two prior felony convictions, or "strikes." They involved robbery with firearm use and assault with a firearm.  (See §§ 211, 245, subd. (b); former § 12022.5;[6] see also § 667, subds. (d), (e)(2)(A)(ii) [Three Strikes Law].)  Additionally, the trial court found that, because of the section 148.1(d) conviction, defendant violated his probation in a 2004 drug case in which the imposition of sentence had been suspended.  (See Health & Saf. Code, § 11352, subd. (a) [transportation of controlled substance, cocaine].)

In light of these verdicts and findings, the trial court sentenced defendant to prison for a total of 30 years to life.  The sentence consisted of the upper term of five years for the 2004 drug conviction, and a consecutive term of 25 years to life for the felony false bomb count and the prior strike convictions.

---

**4**    According to Concolino, the box contained a plastic bag with oily material inside.  Defendant told arresting officers that the oily material in the plastic bag was a mixture of Clorox bleach and Pennzoil motor oil.

**5**    The defense case consisted solely of testimony from one psychologist who had evaluated defendant before trial and reviewed his criminal and psychiatric history.  The psychologist opined that defendant showed signs of paranoid schizophrenia, such as irrational thoughts and impulsive behavior.  In a confused explanation for planting the false bomb at the Center, defendant told the psychologist that he intended to scare women who he believed were harassing or disrespecting him.

**6**    See *post*, at page 7, footnote 7.

5

The Court of Appeal agreed with defendant that his felony violation for planting a false bomb under section 148.1(d) denied him equal protection of the law compared to section 11418.1, the false WMD statute, because only the latter provision required a showing of sustained fear in this regard. Based on the legislative history of section 11418.1, the court found no plausible reason for the disparity, and assumed the Legislature had simply "overlooked" the otherwise "identical" nature of the two crimes. The section 148.1(d) count could therefore be punished only as a misdemeanor in the court's view. As to all other issues raised by defendant, the Court of Appeal rejected them either on the merits or as moot in light of its section 148.1(d) decision.

In disposing of the case, the Court of Appeal declined to reverse the section 148.1(d) conviction or to vacate the probation violation. However, to correct the equal protection violation it had found, the court treated the felony conviction as a misdemeanor, and reduced the penalty "from a minimum indeterminate term in prison of 25 years to life to no more than one year in county jail." The entire sentence was vacated so that it could be restructured on remand in the trial court.

We granted the Attorney General's petition for review on behalf of the People. The issues were limited by this court. First, we asked the parties to address whether section 148.1(d) offends equal protection principles insofar as a violation of that statute may be punished as a felony without the showing of sustained fear required for felonies under section 11418.1. Second, the parties were asked to identify the proper remedy if a constitutional defect was found.

## II. DISCUSSION

We agree with the People that section 148.1(d) is not unconstitutional under the modest standards of scrutiny that indisputably apply here. We first review the relevant statutes, and then show that equal protection principles, when properly applied, do not compel invalidation of defendant's felony conviction and sentence.

6

### A. Statutory Law

For at least 45 years, the Legislature has penalized conduct involving destructive devices and other weapons of a highly dangerous and explosive nature. (§§ 16460, subd. (a), 16510; see former § 12301 et seq., added by Stats. 1967, ch. 1283, § 1, p. 3086, and repealed by Stats. 2010, ch. 711, § 4, operative Jan. 1, 2012.)[7] In general, such devices cannot be possessed in private or public places (§§ 18710, 18715), carried or placed on passenger vessels, vehicles, or aircraft (§ 18725), or sold or transported (§§ 18730, 18735). Nor can they be exploded or ignited (or the subjects of attempt to explode or ignite) with either the intent to injure, terrify, or wrongfully damage property (§ 18740) or to commit murder (§ 18745), or with the effect of causing injury, mayhem, or death (§§ 18750, 18755).

More to the point, a " 'destructive device' " is broadly defined to cover various explosive and incendiary weapons and materials. (§ 16460.) An "explosive" consists of any substance or material commonly used for "detonation or rapid combustion" and capable of producing "a relatively instantaneous or rapid release of gas and heat." (§ 16510.) Included within the long list of destructive and explosive weapons is "[a]ny bomb." (§ 16460, subd. (a)(2).)

No provision in the statutory scheme defines the term "bomb." Courts have explained that the Legislature is presumably aware of the manner in which bombs

---

[7]     See section 16000 et seq. (Deadly Weapons Recodification Act of 2010), added by Statutes 2010, chapter 711, section 6, operative January 1, 2012, and recodifying former section 12000 et seq. (control of deadly weapons), added by Statutes 1953, chapter 36, section 1, page 653, and repealed by Statutes 2010, chapter 711, section 4, operative January 1, 2012; see also sections 16005 (recodification not intended to change substantive law) and 16010 (recodified provisions generally restate and continue previously existing provisions).

are used, and the frequency with which bombings occur.  (*People v. Quinn* (1976) 57 Cal.App.3d 251, 258.)  Everyone is assumed to "know what a bomb is." (*People v. Dimitrov* (1995) 33 Cal.App.4th 18, 25, citing *Quinn, supra*, at p. 259.) In fact, bombs are commonly understood to be so "inherently dangerous" (*People v. Heideman* (1976) 58 Cal.App.3d 321, 335 (*Heideman*)) that possession can be unlawful "even when [the device is] *not* set to explode."  (*People v. Morse* (1992) 2 Cal.App.4th 620, 646 (*Morse*).)  Detonation can occur unexpectedly, while the object is concealed or if the bomber loses control over it, threatening intended and unintended victims alike.  (*Ibid*., citing *People v. Superior Court (Pebbles)* (1970) 6 Cal.App.3d 379, 382.)

Because of these known dangers, section 148.1 has long prohibited various acts that exploit the public's *fear* of bombs, and that predictably provoke havoc and alarm.  Together, subdivisions (a) and (b) of section 148.1 basically prohibit reports of bombs to law enforcement officials, emergency personnel, and communication and transportation outlets, where such reports are knowingly false when made.  Subdivision (c) of section 148.1 prohibits other malicious acts of disseminating information known to be false about the presence of a bomb.

At issue here is section 148.1(d), which prohibits the handling of false bombs themselves.  This section, the substance of which has been in effect for 40 years, read at the time of defendant's crime as follows:  "Any person who maliciously gives, mails, sends, or causes to be sent any false or facsimile bomb to another person, or places, causes to be placed, or maliciously possesses any false or facsimile bomb, with the intent to cause another to fear for his or her personal safety or the safety of others, is guilty of a crime punishable by imprisonment in the state prison, or imprisonment in the county jail not to exceed one year." (Former § 148.1, subd. (d), added as subd. (c) by Stats. 1972, ch. 1142, § 1, p. 2210, redesignated as subd. (d) by Stats. 1984, ch. 824, § 1, and as amended by

8

Stats. 1991, ch. 503, § 1, p. 2446.)  By its own terms, the crime may be punished as either a felony or a misdemeanor.  (See § 17, subds. (a), (b).)[8]

Defendant emphasizes another scheme which was enacted long after the destructive device and false bomb statutes, and which concerns "weapons of mass destruction."  (§ 11416; see § 11415 et seq. [Hertzberg-Alarcon California Prevention of Terrorism Act], added by Stats. 1999, ch. 563, § 1, p. 3936.)  There are several classes of WMD's: (1) poisonous chemical substances (e.g., nerve, blood, choking, and blistering agents), (2) harmful biological materials (e.g., bacteria, viruses, and other toxic organisms and molecules), (3) nuclear or radiological agents (e.g., any container or other device that causes a nuclear yield or releases radioactive material), (4) industrial agents (e.g., hazardous materials used in a commercial process), and (5) airplanes, vessels, and large vehicles.  (§ 11417.)

Whatever the means by which these substances and materials are weaponized and deployed (e.g., incendiary, explosive, thermal, pneumatic, or

---

**8**  After defendant's crime, the penalty provision at the end of section 148.1(d) was modified.  The Legislature removed the reference to "state prison," and, in its place, made the crime punishable "pursuant to subdivision (h) of Section 1170."  (§ 148.1(d), as amended by Stats. 2011, ch. 15, § 259, eff. Apr. 4, 2011, operative Oct. 1, 2011.)  No change was made in language allowing confinement in "county jail not to exceed one year."  (§ 148.1(d).)  The end result is that a false bomb violation remains punishable as either a felony or misdemeanor (see § 17, subds. (a), (b)), except felony violations are punished under section 1170, subdivision (h) (section 1170(h)).  (§ 1170(h), added by Stats. 2011, ch. 15, § 451, eff. Apr. 4, 2011, operative Jan. 1, 2012.)  Felony punishment under section 1170(h) may involve imprisonment in either county jail or state prison depending upon various circumstances, including the nature of any prior and current felony convictions.  (See § 17.5 [explaining efforts to realign punishment for certain felony offenders], added by Stats. 2011, ch. 15, § 229, eff. Apr. 4, 2011, operative Oct. 1, 2011.)

mechanical), they cannot lawfully be used either for the purpose of causing, or in a form that may cause, widespread injury, death, or damage. (§§ 11417, subds. (a)(6)-(7), (b), 11418, subds. (b), (c).) Thus, there are criminal sanctions for the unauthorized possession, transfer, or production of any WMD. (§ 11418, subd. (a).) WMD's also cannot be employed against another person. (*Id*., subd. (b)(1), (2).) Nor can they be used to disrupt the food or drinking water supply (*id*., subd. (b)(3)), to harm animals, crops, seeds, or seed stock (*id*., subd. (b)(4)), or to damage public natural resources, such as beaches, parks, and wildlife. (*Id*., subd. (c).) Related provisions regulate the creation of virulent pathogens (*id*., subd. (d)), and the possession of various "restricted biological agents" (§ 11419).

As with bombs, the Legislature has recognized that the fear of WMD deployment can harm the public. Hence, certain imminent and credible "threat[s]" to use WMD's, which cause "sustained fear," may be punished as felonies or misdemeanors. (§ 11418.5, subd. (a) (the WMD threat statute).)

The same is true of *fake* WMD's. Thus, under section 11418.1, it is a misdemeanor for anyone to possess, place, or otherwise expose another person to "any false or facsimile of a weapon of mass destruction" with the intent to cause another person to fear for his safety or the safety of others. However, "[i]f the [perpetrator's] conduct causes another person to be placed in sustained fear," the crime is punishable as either a felony or misdemeanor. (*Ibid*.)[9] Under both

---

**9**     Section 11418.1 provides in full, as follows: "Any person who gives, mails, sends, or causes to be sent any false or facsimile of a weapon of mass destruction to another person, or places, causes to be placed, or possesses any false or facsimile of a weapon of mass destruction, with the intent to cause another person to fear for his or her own safety, or for the personal safety of others, is guilty of a misdemeanor. If the person's conduct causes another person to be placed in sustained fear, the person shall be punished by imprisonment in a county jail for not more than one year or in the state prison for 16 months, or two or three

*(footnote continued on next page)*

section 11418.5 (the WMD threat statute) and section 11418.1 (the false WMD statute) " 'sustained fear' " may be "established by, but is not limited to, conduct such as evacuation of any building by any occupant, evacuation of any school by any employee or student, evacuation of any home by any resident or occupant, [or] any isolation, quarantine, or decontamination effort." (§ 11418.5, subd. (b).)

### B. Equal Protection

The People argue, and defendant does not dispute, that federal and state equal protection guarantees are offended here only if the challenged disparity between section 148.1(d) and section 11418.1 bears no rational relationship to a valid state interest. (See U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) Both defendant and the Court of Appeal err, in the People's view, by assuming that false bombs have no greater capacity to cause sustained fear than false WMD's, and that such a showing is always necessary to warrant felony punishment for both crimes. The People allude to inherent differences in the nature and effect of a bomb scare, as opposed to a WMD hoax. Such factors, they assert, provide a plausible basis on which the Legislature could conclude that evidence of sustained fear would be redundant and unnecessary in felony false bomb cases, but not for felonies under the false WMD statute. We agree.

Where, as here, a statute involves neither a suspect class nor a fundamental right, it need only meet minimum equal protection standards, and survive "rational basis review." (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836 (*Wilkinson*).) A criminal defendant has no vested interest " 'in a specific term of imprisonment or

---

*(footnote continued from previous page)*

years and by a fine of not more than two hundred fifty thousand dollars ($250,000). For purposes of this section, 'sustained fear' has the same meaning as in Section 11418.5."

11

in the designation a particular crime receives.' " (*Id*. at p. 838.)  It is both the prerogative and the duty of the Legislature to define degrees of culpability and punishment, and to distinguish between crimes in this regard.  (*Id*. at p. 840.) Courts routinely decline to intrude upon the "broad discretion" such policy judgments entail.  (*People v. Ward* (2005) 36 Cal.4th 186, 217.)  Equal protection analysis does not entitle the judiciary to second guess the wisdom, fairness, or logic of the law.  (*Heller v. Doe* (1993) 509 U.S. 312, 319 (*Heller*).)

Under these principles, equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." (*Heller, supra*, 509 U.S. 312, 320.)  In other words, the legislation survives constitutional scrutiny as long as there is " 'any reasonably conceivable state of facts that could provide a rational basis for the classification.' " (*Ibid*.)  This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated.  (*Ibid*.)  While the realities of the subject matter cannot be completely ignored (*id*. at p. 321), a court may engage in " 'rational speculation' " as to the justifications for the legislative choice.  (*Id*. at p. 320.)  It is immaterial for rational basis review "whether or not" any such speculation has "a foundation in the record." (*Id*. at pp. 320-321; see *Nordlinger v. Hahn* (1992) 505 U.S. 1, 11, 15-16; *Wilkinson, supra*, 33 Cal.4th 821, 836; *Warden v. State Bar* (1999) 21 Cal.4th 628, 644-645, 650 (*Warden*).)

In mounting his constitutional challenge, defendant did not negate every possible, plausible grounds for the disputed disparity between section 148.1(d) and section 11418.1.  (*Heller, supra*, 509 U.S. 312, 320.)  No violation of either provision occurs unless the perpetrator commits the proscribed act, e.g., "places" a "false or facsimile" bomb or WMD "with the intent to cause" another person "to fear" for his safety or the safety of others.  (§§ 148.1(d), 11418.1.)  In those cases,

12

on such a showing alone, the false bomb statute permits felony or misdemeanor punishment, while the false WMD statute defines the crime as a misdemeanor.

However, unlike section 148.1(d), the false WMD statute gives the option of misdemeanor *or* felony treatment "[*i*]*f*" — and, apparently, only if — the perpetrator's intentional effort to instill fear ultimately "causes another person to be placed in sustained fear." (§ 11418.1.) "Sustained fear" is not defined in direct emotional terms. Rather, its presence may be "established" by inference from "conduct" in response to a false WMD. (§ 11418.5, subd. (b).) The nonexclusive examples in the statutory list (e.g., evacuation, isolation, quarantine, and decontamination) all involve precautions and reactions that commonly occur when victims, bystanders, or emergency officials perceive a risk of injury, death, or other harm, and have reason to act on such fear. (*Ibid.*)

The obvious purpose of *both* statutes is to deter and punish acts that can cause fear and disorder consistent with the criminal intent underlying the planting of the false bomb or the false WMD. (See *People v. Seijas* (2005) 36 Cal.4th 291, 306 [inferring from a " 'common sense reading' " of § 148.5, which punishes false crime reports to peace officers, that it was meant to prevent " 'the resulting inconvenience and danger' " to the public].) The requirement that the perpetrator be shown to have caused sustained fear for felony purposes under section 11418.1, but not under section 148.1(d), reflects legislative awareness of the different manner in which false WMD's and false bombs are, or at least may be, perceived.

As discussed above, ordinary persons recognize bombs, and understand that they can detonate, combust, and explode without warning, in an instant. (See, e.g., *Heideman, supra*, 58 Cal.App.3d 321, 329 [homemade bomb, which consisted of stick of dynamite to which batteries, mercury switch, and wiring were attached, could be detonated either accidentally or on purpose with blasting caps].) It is also commonly known that such features give victims little or no chance to escape the

13

bomb's lethal effects. (See, e.g., *Morse, supra*, 2 Cal.App.4th 620, 633-634 [two members of police bomb squad killed by sudden explosion of pipe bomb being disarmed in defendant's garage].) Thus, a false bomb planted with the *intent* to cause fear when seen or detected would almost certainly be *expected* to cause fear, including sustained fear. The Legislature could readily conclude that sustained fear is inherent in any bomb threat, and that its presence in section 148.1(d) would add little to the crime, either in felony or misdemeanor form.

The evidence in this case illustrates the point. Defendant placed his box outside the Center in broad daylight and in plain view of employees experienced in handling emergencies. Indeed, defendant apparently believed the Center housed the sheriff's department. The box bore the name of a powerful explosive, C-4. The American flag stuck on top could have been viewed either as a political statement or as an antenna for detonation purposes. Predictably, the box frightened the person who found it. A disruptive chain of events then occurred, including the report of a bomb threat and mobilization of the bomb squad. Defendant obviously intended and caused a response akin to sustained fear.

The Legislature could have viewed false WMD's differently from false bombs in this regard. The list of banned WMD's includes *some* commonplace objects intentionally used in a widely destructive and weapon-like manner (e.g., exploding aircraft, vessels, and large vehicles). However, other WMD's involve exotic substances (e.g., chemical poisons and biological pathogens), or unusual items (e.g., nuclear and radioactive devices). These weapons can be deployed by diverse means, including some that are neither incendiary nor explosive (e.g., thermal, pneumatic, or mechanical). The range of targets is broad (e.g., animals, crops, and natural resources), and is not limited to persons or other living things.

By definition, facsimiles of the foregoing weapons are not *as* certain to cause sustained fear as facsimiles of conventional bombs, even where they are

14

planted with such intent. Some false WMD's might closely resemble actual weapons but not be widely recognized as such when seen by the general public. In other cases, a false WMD might not cause sustained fear even if observed and mistaken for a genuine weapon, because any perceived danger is relatively easy to escape or avoid. The Legislature could have assumed that not every false WMD that is intended to cause fear can be expected to do so, and that felony sanctions under section 11418.1 therefore warrant an affirmative showing of sustained fear.

Defendant disagrees. He argues that because WMD's are commonly associated with widespread damage and inescapable harm, fear caused by a false WMD is inherently worse than fear of a false bomb. Defendant contrasts false WMD cases in which victims cannot "reach a place of safety" with his version of the typical bomb scare in which victims "can run away" and "easily evade[ ]" any risk of explosion. For example, defendant criticizes the statutory scheme insofar as it would allow (1) only misdemeanor punishment for subjecting victims to an empty envelope bearing an "anthrax" label absent evidence that it caused sustained fear under section 11418.1, and (2) felony punishment for false bomb violations under section 148.1(d) whether or not sustained fear is shown.

We see at least two flaws in this approach. First, defendant's hypothetical illustrates the differences between the two statutes under review. By all appearances, it is the anthrax scare, not the false bomb, that victims can more readily avoid. Depending upon when the label is seen, the envelope need not be touched, held, or opened. It can simply be left alone when danger is perceived. Because an envelope believed to be filled with a toxic substance will not likely explode, anyone in the vicinity could safely walk — not run — away. Thus, the Legislature had a rational basis on which to conclude that proof of sustained fear was justified for felony false WMD violations, but not for false bombs.

15

Second, defendant ignores the deferential nature of the equal protection standard that applies here. When conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made. A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends." (*Heller, supra*, 509 U.S. 312, 321.) Consequently, any plausible reason for distinguishing between felony violations of section 148.1(d) and section 11418.1 regarding sustained fear need not exist in *every* scenario in which the statutes might apply. It is sufficient if the acts prohibited by the false WMD statute "sometimes" lack the same inherent capacity to cause sustained fear as false bomb crimes. (*Wilkinson, supra*, 33 Cal.4th 821, 839 [rejecting equal protection challenge to sentencing scheme based on similar reasoning that Legislature could have found at least some scenarios in which the seemingly lesser crime of battery on a custodial officer *without* injury is a more serious crime and merits greater punishment than the seemingly greater crime of battery on a custodial officer *with* injury].) These standards are met here.

Defendant next claims that a false bomb is no more likely to be recognized as a harmful device or to cause fear than a false WMD. He theorizes that someone who plants a false bomb intending to cause fear can easily "fail in creating" an object that resembles a bomb, such that "a person seeing it is not afraid." On this basis, defendant suggests that the lack of a sustained fear requirement in the false bomb statute is not rational or constitutional compared to the false WMD statute.

We reject the premise that "recognizability" of the mock object as a bomb or WMD is the equivalent of inherent or sustained fear under the relevant statutes. Defendant overlooks the fact that the Legislature has created another crime under section 11418.1, a misdemeanor, for false WMD's placed with the intent to cause fear, and which need not be shown to have caused sustained fear. Nor does the lack of a sustained fear component in felony cases under section 148.1(d) give rise

16

to an equal protection violation compared to felony violations under section 11418.1. Nothing in defendant's theory about the risks of poorly made false bombs undercuts the conclusion that inherent differences in the fearful perception of false bombs and false WMD's could readily explain the differences in culpability and punishment between section 148.1(d) and section 11418.1.

Finally, defendant insists the Court of Appeal properly invalidated his felony conviction and sentence under section 148.1(d) based on the legislative history of section 11418.1. Defendant infers from this material that the sustained fear limitation for felonies under the false WMD statute was simply intended to limit the reach of the Three Strikes Law. In other words, nothing shows that the Legislature saw any difference in public perception between false WMD's and false bombs, or that it sought to reserve felony sanctions for false WMD crimes which mirrored false bombs in their harmful effects. Hence, defendant claims, lawmakers' statements about the purpose of section 11418.1 indirectly reveal no rational basis for the lack of a sustained fear component in section 148.1(d).

We assume, purely for argument's sake and consistent with defendant's view, that historical information about the relationship between the challenged disparity and the Legislature's *actual* purpose, express or implied, is relevant even where, as here, a rational basis can be independently discerned. (Cf. *Heller, supra*, 509 U.S. 312, 320-321 [equal protection challenge fails unless it negates " 'every conceivable basis' " that might support the law, "whether or not the basis has a foundation in the record"]; accord, *Warden, supra*, 21 Cal.4th 628, 650.) That said, defendant's analysis of the nature and purpose of section 11418.1 finds no support in the one committee report on which he relies. (See Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1838 (2001-2002 Reg. Sess.) as amended Mar. 7, 2002 (Senate Report).)

17

The Senate Report noted that section 11418.1 created a new crime. The new false WMD statute was said to be inspired by the false bomb statute in section 148.1(d), which had been in effect for a long time. The Senate Report stated that because law enforcement officials were presumably familiar with section 148.1(d), the new false WMD crime should involve "similar" conduct and penalties. (Senate Report, *supra*, at p. 18.) It was therefore determined that section 11418.1, like section 148.1(d), would function as a "wobbler," such that violations could be treated either as felonies or misdemeanors. (Senate Report, *supra*, at p. 18.)

The Senate Report explained that the "wobbler" provision of section 11418.1, allowing felony sanctions in false WMD cases, would apply "where sustained fear, as defined, is produced by the crime." (Senate Report, *supra*, at p. 18.) In other cases, where the perpetrator committed the requisite act with the intent to cause fear, but where there was an "absence of sustained fear," violations of section 11418.1 would be misdemeanors. (Senate Report, *supra*, at p. 2; see *id.* at p. 18.) Section 11418.5, the WMD threat statute, was identified as the source of the definition of sustained fear. (Senate Report, *supra*, at pp. 10, 18.)

As background, the Senate Report observed that the new false WMD offense — like all other new felonies — expanded the potential reach of the Three Strikes Law. Some lawmakers were apparently reluctant to create new crimes that triggered such penalties for recidivists where the prohibited conduct "does not involve violence." (Senate Report, *supra*, p. 19.) The Senate Report made clear, however, that any such concerns were misplaced in the case of felonies under section 11418.1. The reason was that "the fear from and response to a facsimile nuclear device, anthrax, ebola, etc., is equivalent to the harm from violent conduct" under the Three Strikes Law. (Senate Report, *supra*, at pp. 19-20.)

Contrary to what defendant argues, the Senate Report implicitly shows a rational connection between the disparate role of sustained fear in the false bomb

18

and false WMD statutes, and the purpose such disparity was apparently meant to serve. As noted, the Senate Report *dismissed* any concern that the harm caused by felony violations of the false WMD statute was not tantamount to the harm caused by "violent" conduct in other felony cases in which Three Strikes sentencing applied. In so doing, the Senate Report analogized such violence to the "fear from and response to" a false WMD — a clear reference to the sustained fear requirement used to elevate the new crime from a misdemeanor to a felony.

Moreover, in acknowledging the similarity between the "wobbler" provisions of section 11418.1 and section 148.1(d), the Legislature implied that it was aware of the substance of the latter statute, that proof of sustained fear was *not* required in felony false bomb cases, and that both felonies nonetheless involved the same level of "violent" fear. As we have explained, the only sense in which the planting of a false bomb with the intent to cause fear is inherently more "violent" than planting a false WMD with a similar intent is the *sustained fear* inherent in false bomb cases, but sometimes missing from false WMD cases. In other words, a showing of sustained fear for felonies under the false WMD statute was necessary to reflect the same level of violent fear that the Legislature *assumed* was present in false bomb cases, even in the absence of an express statutory requirement to that effect. Nothing in the Senate Report undercuts this view.[10]

_____

[10] In arguing that sustained fear is more prevalent in false WMD cases, and that false bomb crimes should be no easier to prove in this regard, defendant cites sentencing changes in section 148.1(d) enacted after his crime. As noted, these amendments punish felonies under section 148.1(d) pursuant to section 1170(h), with no corresponding change in section 11418.1. (See *ante*, at p. 9, fn. 8.) However, it does not follow that the Legislature has downgraded the seriousness of false bombs or seeks to punish them less harshly than false WMD's. Rather, section 1170(h) simply permits incarceration in county jail, rather than state prison, in certain felony cases for terms no shorter than the state prison terms previously allowed under section 148.1(d). (See §§ 18, subd. (a), 1170(h)(1).)

*(footnote continued on next page)*

# III. CONCLUSION

The felony provision in section 148.1(d) does not deprive defendant of equal protection of the law on any of the grounds raised on review. In light of this determination, we need not decide, and do not decide, the manner in which to remedy a constitutional violation of the kind not present here.

The judgment of the Court of Appeal is therefore affirmed insofar as it upheld the trial court's finding of a probation violation and declined to reverse, in its entirety, defendant's conviction under Penal Code section 148.1, subdivision (d). The judgment is otherwise reversed, and the cause remanded to the Court of Appeal for proceedings not inconsistent with the views expressed herein.

**BAXTER, J.**

**WE CONCUR:**

KENNARD, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.
LEVY, J.*

---

*(footnote continued from previous page)*

Thus, as defendant concedes, these amendments may change "the place where a felony sentence is served," but do not necessarily "alter the length" of that sentence. As defendant further acknowledges, recidivists like him, among other felony offenders, are disqualified as county jail candidates. (See § 1170(h)(3).) Overall, the Legislature has expressed an intent to enhance, not diminish, public safety. (See § 17.5, subd. (a)(5).) Defendant has exposed no irrationality in the differences between the false bomb and false WMD statutes as to either sustained fear or felony sanctions.

*Associate Justice, Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Turnage

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 183 Cal.App.4th 458
**Rehearing Granted**

_____

**Opinion No.** S182598
**Date Filed:** August 6, 2012

_____

**Court:** Superior
**County:** Yolo
**Judge:** Thomas Edward Warriner

_____

**Counsel:**

Peggy A. Headley, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon, Paul E. O'Connor, Julia A. Hokans, Janet E. Neeley and Rachelle A. Newcomb, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Peggy A. Headley
Law Office of Peggy A. Headley
11448 Deerfield Drive, Suite 2, PMB 180
Truckee, CA  96161
(530) 550-7458

Rachelle A. Newcomb
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 324-5320