Filed 9/28/23  P. v. Alvez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN CHARLES ALVEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B325218<br>(Super. Ct. No. CR38932)<br>(Ventura County) |

John Charles Alvez appeals an order entered after the trial court denied his motion to initiate a proceeding pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) to preserve youth-related mitigation evidence to use at a future youth offender parole hearing.  (Pen. Code, § 3051.)[1]  We conclude that the court properly rejected Alvez's constitutional arguments that he has been denied equal protection of the law and freedom from cruel and unusual punishment and affirm.  *(People v. Jackson* (2021) 61 Cal.App.5th 189, 199-200; *People v. Acosta* (2021) 60

---

[1] All statutory references are to the Penal Code.

Cal.App.5th 769, 774-782; *In re Williams* (2020) 57 Cal.App.5th 427, 433-439.)

*FACTUAL AND PROCEDURAL HISTORY*

This appeal involves the underlying murder and robbery of 21-year-old Marco Rodriguez, a clerk in a Moorpark grocery store. Alvez delivered spices to the grocery store and was friendly with Rodriguez. On May 5, 1996, Alvez, then 22 years old, shot Rodriguez twice in the back of the head during a robbery. Alvez took cash from the cash register and fled the store.

In 1996, a jury convicted Alvez of first degree murder and found that he committed the murder while engaged in a robbery and while lying in wait. (§§ 187, subd. (a), 189, 190.2, subd. (a)(17)(A) & (15).) The jury also convicted him of second degree robbery and found that he personally used a firearm. (§§ 211, 12022.5, subd. (a).) For this special circumstances murder, the trial court sentenced Alvez to the mandated life without the possibility of parole (LWOP) plus 10 years consecutive for the firearm enhancement. The court also imposed but stayed sentence on the robbery and related firearm enhancement pursuant to section 654. We affirmed the conviction in *People v. Alvez* (Nov. 19, 1997, B109325) [nonpub. opn.].

On November 9, 2022, Alvez filed a motion in propria persona requesting a *Franklin* hearing and appointment of counsel pursuant to section 1203.01. The trial court denied the motion deciding that Alvez was statutorily ineligible because he was 22 years old when he committed the Rodriguez murder and received a LWOP sentence for the crime. (§ 3051, subd. (h).) The court also rejected Alvez's constitutional challenges.

*DISCUSSION*

Alvez appeals and contends that section 3051, subdivision (h), which makes young adults sentenced to LWOP ineligible for youth offender parole hearings, violates equal protection of the law. He also claims his sentence violates the constitutional proscriptions against cruel and unusual punishment. In part, Alvez relies upon *People v. Hardin* (2022) 84 Cal.App.5th 273, review granted January 11, 2023, S277487 (*Hardin*) and sympathetic statements by reviewing courts inviting the Legislature to reconsider the parole hearing exclusion of section 3051, subdivision (h). (*People v. Jackson, supra,* 61 Cal.App.5th 189, 201-202 (conc. opn. of Dato, J.); *id.* at p. 202 (conc. statement of Liu, J.); *People v. Acosta, supra,* 60 Cal.App.5th 769, 780-781.) He also contends that his sentence violates the California Racial Justice Act of 2020 (Racial Justice Act) because the LWOP sentence is imposed more often on young adults of color.

*I.*

Alvez argues that section 3051, subdivision (h), denying him a youth offender parole hearing, violates his state and federal constitutional rights affording equal protection of the law pursuant to the Fourteenth Amendment and article I, section 7 of the California Constitution. He asserts that the equal protection analysis must consider the purposes of section 3051 – to account for the continuing brain and personality development of juvenile and young adult offenders.

Section 3051 provides a parole eligibility mechanism for juvenile offenders. When first enacted in 2013, section 3051 applied only to juvenile offenders sentenced to indeterminate life terms with the possibility of parole and not juvenile offenders sentenced to LWOP or those over 18 years at the time of the

3

offense. (Former § 3051, subds. (a)(1), (b); Stats. 2013, ch. 312, § 4.) The Legislature later amended section 3051 to extend eligibility to youthful offenders under the age of 23, then later to age 25. (Former § 3051, subds. (a)(1), (b); Stats. 2015, ch. 471, § 1; Stats. 2017, ch. 675, § 1.) Our Supreme Court in *People v. Franklin*, *supra*, 63 Cal.4th 261, 269, established a procedure by which an inmate may be entitled to a hearing to preserve evidence for a future parole hearing regarding the impact of the inmate's youth in the commission of the crime.

Section 3051, subdivision (h), however, provides: "This section shall not apply to cases . . . in which an individual is sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age." "Controlling offense" refers to "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (*Id.*, subd. (a)(2)(B).) Alvez's argument is one that many reviewing courts have considered and rejected. We join those decisions.

The state and federal Constitutions extend to persons the equal protection of the law. (*People v. Chatman* (2018) 4 Cal.5th 277, 287.) An equal protection challenge requires a showing that the government has adopted a classification affecting two or more similarly situated groups in an unequal manner. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836.) Here the classification is subject to the minimum equal protection standard: rational basis review. (*People v. Turnage* (2012) 55 Cal.4th 62, 74 [statutes not involving suspect classes like race or national origin or impinging on fundamental rights subject to minimum equal protection standard of rational basis review].)

4

Pursuant to the rational basis review, equal protection of the law is denied only where there is no rational relationship between the disparity of treatment and some legitimate governmental purpose. (*People v. Turnage, supra*, 55 Cal.4th 62, 74.) "To successfully challenge a law on equal protection grounds, the defendant must negate ' " 'every conceivable basis' " ' on which 'the disputed statutory disparity' might be supported. [Citation.] 'If a plausible basis exists for the disparity, "[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law."'" (*People v. Acosta, supra*, 60 Cal.App.5th 769. 778.)

Rational basis review requires courts to ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner, and whether the challenged classification ultimately bears a rational relationship to a legitimate state purpose. (*People v. Chatman, supra*, 4 Cal.5th 277, 289.) A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable. (*Ibid.*)

We reject Alvez's contention that those who are 18 to 25 years old when sentenced to LWOP are similarly situated to those who are 18 to 25 years old when sentenced to life with the possibility of parole, for purposes of a *Franklin* hearing. Alvez's claim fails because there is a rational basis for different treatment of the two groups. The distinction between these two groups is rational given the level of culpability necessary to convict a defendant of a first degree murder with special circumstances. It is the prerogative and duty of the Legislature to recognize degrees of culpability when drafting punishment for crime. (*People v. Wilkinson, supra*, 33 Cal.4th 821, 840.)

5

We disagree with *People v. Hardin*, *supra*, 84 Cal.App.5th 273, that the different treatment here violates equal protection. We agree with the majority of courts that decided that a rational basis exists to distinguish between young offenders who are sentenced to life with the possibility of parole and those who are not, for purposes of a *Franklin* hearing.

II.

Alvez contends that section 3051, subdivision (h), renders his sentence unconstitutionally cruel and/or unusual pursuant to article I, section 17 of the California Constitution and the Eighth Amendment to the United States Constitution. He points out that young adults with lengthy non-LWOP sentences are eligible for youth offender parole hearings. (§ 3051, subds. (a), (b)(1)-(3).) Alvez asserts that a mandatory LWOP sentence is grossly disproportionate to his crimes and ignores the hallmark features of his youth and potential for rehabilitation, as well as his individual circumstances. He adds that other jurisdictions have held mandatory LWOP sentences for young adults unconstitutional as failing to recognize the mitigating qualities of youth and potential for maturity and growth.

The trial court imposed sentence on Alvez in 1996. That sentence rendered him ineligible for release on parole; his sentence remains the same today. Recent legislation, including section 3051 and judicial decisions, does not change this fact. Although Alvez sought a judicial determination that he is entitled to a *Franklin* hearing, in practical effect he is seeking a determination that he is "eligible for release on parole." (§ 3051, subd. (b)(4).) This is so notwithstanding that he is a young adult offender, not a juvenile LWOP offender within the meaning of section 3051, subdivision (b)(4). Moreover, subdivision (h)

6

unambiguously states that young adult LWOP offenders (like Alvez) are ineligible for release on parole.

Our Supreme Court has foreclosed similar arguments in the context of the death penalty. *In re Williams*, *supra*, 57 Cal.App.5th 427, 439, concluded when considering an Eighth Amendment challenge by a young adult LWOP offender who committed his controlling offense at age 21: "To the extent petitioner contends an LWOP sentence is an unconstitutional cruel and unusual punishment when imposed on *any* 21-year-old defendant, we observe our Supreme Court has essentially rejected that very argument in the context of the death penalty. In *People v. Flores* (2020) 9 Cal.5th 371, 429, the court acknowledged research that youths ages 18 to 21 share many of the same cognitive and developmental deficiencies as adolescents under age 18. But the court nonetheless held that 18 is " ' "the age at which the line for death eligibility ought to rest." " ' If the Eighth Amendment does not prohibit a sentence of death for 21 year olds, then most assuredly, it does not prohibit the lesser LWOP sentence.

The judicial decisions upon which Alvez relies involve minors under the age of 18 years. *Miller v. Alabama* (2012) 567 U.S. 460, 465, held that mandatory life without parole sentences for those under the age of 18 years at the time of their crimes violates the Eighth Amendment cruel and unusual punishment prohibition. *Roper v. Simmons* (2005) 543 U.S. 551 held that the Eighth Amendment barred capital punishment for children. *Graham v. Florida* (2010) 560 U.S. 48 barred LWOP sentences for children committing nonhomicide offenses. These decisions considered the Eighth Amendment's prohibition against cruel and unusual punishment in the context of minors under the age

of 18.  *Roper* concluded:  "[A] line must be drawn" and "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood."  (*Roper*, at p. 574.)  Thus, 18 years is "the age at which the line for death eligibility ought to rest."  (*Ibid.*)

Our Supreme Court has also held that adults between 18 and 25 years old can constitutionally receive the death penalty.  (*People v. Tran* (2022) 13 Cal.5th 1169, 1234-1235; *People v. Flores*, *supra*, 9 Cal.5th 371, 429-430; *People v. Powell* (2018) 6 Cal.5th 136, 191.)  Intermediate appellate courts have also rejected the claims Alvez makes here.  (*People v. Acosta*, *supra*, 60 Cal.App.5th 769, 781-782; *People v. Windfield* (2021) 59 Cal.App.5th 496, 525-527; *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1030-1032; *id.* at p. 1032 ["Unless and until the United States Supreme Court, the California Supreme Court, the Legislature, or the voters by initiative change the law, we are bound to apply it"].)  We agree with those decisions and reject Alvez's contentions.

*III.*

For the first time on appeal, Alvez claims that mandatory LWOP is cruel or unusual punishment pursuant to the Racial Justice Act.  (§ 745.)  He asserts that the mandatory LWOP is imposed more often on young adults of color.

Section 745, subdivision (b), provides three avenues for bringing a claim pursuant to the Racial Justice Act:  motion in the trial court, petition for writ of habeas corpus, or a motion pursuant to section 1473.7 for those persons no longer in custody.  A defendant must establish a prima facie showing by a preponderance of the evidence that there is a substantial

likelihood that a violation of the law has occurred.  (§ 745, subds. (c), (h)(2).)

Here Alvez is precluded from raising this claim for the first time on appeal and we do not consider it.

*DISPOSITION*

The judgment (order) is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

BALTODANO, J.

Gilbert A. Romero, Judge

Superior Court County of Ventura

_____

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo, Blythe J. Leszkay, and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.