Filed 10/18/23  P. v. Chappell CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br> Plaintiff and Respondent,<br><br>v.<br><br>ERIC LEE CHAPPELL,<br><br> Defendant and Appellant. | 2d Crim. No. B325387<br>(Super. Ct. No. CR22466)<br>(Ventura County) |

Eric Lee Chappell appeals an order entered after the trial court denied his motion to initiate a proceeding pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) to preserve youth-related mitigation evidence to use at a future youth offender parole hearing.  (Pen. Code, § 3051.)[1]  We conclude that the court properly rejected Chappell's constitutional arguments that he has been denied equal protection of the law and affirm. *(People v. Jackson* (2021) 61 Cal.App.5th 189, 199-200; *People v.*

---

[1] All statutory references are to the Penal Code.

*Acosta* (2021) 60 Cal.App.5th 769, 774-782; *In re Williams* (2020) 57 Cal.App.5th 427, 433-439.)

*FACTUAL AND PROCEDURAL HISTORY*

This appeal involves the underlying murder and robbery of Keith Wehry, a cashier at a Port Hueneme gasoline station. Chappell, a former employee at the gasoline station, had been dismissed from employment several days earlier. On April l2, 1987, Chappell, then 18 years 11 months old, shot Wehry three times at close range with a sawed-off shotgun. Chappell then took $200 cash from the cash register and fled.

In 1988, a jury convicted Chappell of first degree murder and found that he committed the murder while engaged in a robbery. (§§ 187, subd. (a), 189, 190.2, subd. (a)(17)(A) [special circumstance].) The jury also convicted him of second degree robbery and found that he personally used a firearm during commission of the crimes. (§§ 211, 1203.06, subd. (a)(1)(B).) For the special circumstance murder, the trial court sentenced Chappell to the mandated life without the possibility of parole (LWOP) plus two years consecutive for the firearm enhancement. The court also imposed sentence on the robbery as well as unrelated crimes relating to Chappell's theft of the shotgun. We affirmed the conviction in *People v. Chappell* (Sept. 7, 1989, B035576) [nonpub. opn.].

On October 31, 2022, Chappell filed a motion in propria persona requesting a *Franklin* hearing and appointment of counsel pursuant to section 1203.01. The trial court summarily denied the motion deciding that Chappell was statutorily ineligible because he was 18 years old when he committed the Wehry murder and received a LWOP sentence for the crime. (§ 3051, subd. (h), *post*.) The court also rejected Chappell's

2

constitutional challenge, relying upon the many appellate decisions rejecting the same arguments.

*DISCUSSION*

Chappell appeals and contends that section 3051, subdivision (h), which makes young adults sentenced to LWOP ineligible for youth offender parole hearings, violates equal protection of the law.  He points out that a young adult offender serving a lengthy non-LWOP sentence may receive a *Franklin* hearing.  In part, Chappell relies upon *People v. Hardin* (2022) 84 Cal.App.5th 273, 287-288, review granted January 11, 2023, S277487, that the purpose of section 3051 is not to assess culpability or measure punishment, but to account for neuroscience research that the human brain continues to develop into a person's mid-20's, particularly the portions affecting judgment and decision making.  Chappell also asserts that he has participated in many educational, vocational, and charitable endeavors during his LWOP imprisonment, has matured and rehabilitated, and is a model inmate.

Chappell argues that section 3051, subdivision (h), denying him a youth offender parole hearing, violates his state and federal constitutional rights affording equal protection of the law pursuant to the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution.  He asserts that the equal protection analysis must consider the ameliorative purpose of section 3051 – to account for the continuing brain and personality development of both juvenile and young adult offenders.  We review his claim de novo. (*Samples v. Brown* (2007) 146 Cal.App.4th 787, 799 [interpretation of a statute and determination of its constitutionality are questions of law].)

3

Section 3051 provides a parole eligibility mechanism for juvenile offenders. (*People v. Morales* (2021) 67 Cal.App.5th 326, 345-346.) When first enacted in 2013, section 3051 applied only to juvenile offenders sentenced to indeterminate life terms with the possibility of parole and not juvenile offenders sentenced to LWOP or those over 18 years at the time of the offense. (Former § 3051, subds. (a)(1), (b); Stats. 2013, ch. 312, § 4.) The Legislature later amended section 3051 to extend eligibility to youthful offenders under the age of 23, then later to age 25. (Former § 3051, subds. (a)(1), (b); Stats. 2015, ch. 471, § 1; Stats. 2017, ch. 675, § 1.) Our Supreme Court in *People v. Franklin, supra*, 63 Cal.4th 261, 269, established a procedure by which an inmate may be entitled to a hearing to preserve evidence for a future parole hearing regarding the impact of the inmate's youth in the commission of the crime.

Section 3051, subdivision (h), however, provides: "This section shall not apply to cases . . . in which an individual is sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age." "Controlling offense" refers to "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (*Id.*, subd. (a)(2)(B).) Chappell's argument is one that many reviewing courts have considered and rejected. We join those decisions.

The state and federal Constitutions extend to persons the equal protection of the law. (U.S. Const., 14th Amend.; Cal. Const., art. 1, § 7; *People v. Chatman* (2018) 4 Cal.5th 277, 287.) An equal protection challenge requires a showing that the government has adopted a classification affecting two or more similarly situated groups in an unequal manner. (*People v.*

4

*Wilkinson* (2004) 33 Cal.4th 821, 836.)  We then inquire whether the disparate treatment of two similarly situated groups is justified by a constitutionally sufficient state interest.  (*Ibid.*)  Here the classification is subject to the minimum equal protection standard of rational basis review.  (*People v. Turnage* (2012) 55 Cal.4th 62, 74 [statutes not involving suspect classes like race or national origin or impinging on fundamental rights subject to minimum equal protection standard of rational basis review].)

Pursuant to the rational basis review, equal protection of the law is denied only where there is no rational relationship between the disparity of treatment and some legitimate governmental purpose.  (*People v. Turnage*, *supra*, 55 Cal.4th 62, 74.)  "To successfully challenge a law on equal protection grounds, the defendant must negate ' " 'every conceivable basis' " ' on which 'the disputed statutory disparity' might be supported.  [Citation.]  'If a plausible basis exists for the disparity, "[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law." ' " (*People v. Acosta*, *supra*, 60 Cal.App.5th 769. 778.)

Rational basis review requires courts to ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner, and whether the challenged classification ultimately bears a rational relationship to a legitimate state purpose.  (*People v. Chatman*, *supra*, 4 Cal.5th 277, 289.)  A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.  (*Ibid.*)

We reject Chappell's contention that those who are 18 to 25 years old when sentenced to LWOP are similarly situated to those who are 18 to 25 years old when sentenced to life with the

5

possibility of parole, for purposes of a *Franklin* hearing. (*People v. Jackson, supra,* 61 Cal.App.5th 189, 199 [LWOP and non-LWOP offenders are not similarly situated because only the former committed special circumstance murder]; *In re Williams, supra,* 57 Cal.App.5th 427, 435 [persons convicted of different crimes are not similarly situated for equal protection purposes and can be punished differently].)

Similar situation aside, however, Chappell's claim also fails because there is a rational basis for different treatment of the two groups. The distinction between these two groups is rational given the level of culpability necessary to convict a defendant of a first degree murder with special circumstances. It is the prerogative and duty of the Legislature to recognize degrees of culpability when drafting punishment for crime. (*People v. Wilkinson, supra,* 33 Cal.4th 821, 840.) Equal protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law. (*People v. Turnage, supra,* 55 Cal.4th 62, 74.) The Legislature has "broad latitude to define crimes, separate them into degrees, and assign them different punishments based on its view of the crimes' comparative gravity and on policy objectives like deterrence, retribution, and incapacitation." (*People v. Sands* (2021) 70 Cal.App.5th 193, 205.)

We disagree with *People v. Hardin, supra,* 84 Cal.App.5th 273, that the different treatment here violates equal protection. We agree with the majority of courts that decided that a rational basis exists to distinguish between young offenders who are sentenced to life with the possibility of parole and those who are not, for purposes of a *Franklin* hearing. The Legislature has rationally judged special circumstance murder to be more severe

6

and more deserving of lifetime punishment than nonspecial circumstance first degree murder.  (*In re Williams*, *supra*, 57 Cal.App.5th 427,436.)

*DISPOSITION*

The judgment (order) is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.

7

Michele M. Castillo, Judge

Superior Court County of Ventura

_____

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.