Filed 4/15/21  P. v. Perry CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA LEE PERRY,<br><br>        Defendant and Appellant. | A159464<br><br>(Contra Costa County<br>Super. Ct. No. 5-131497-0) |

**MEMORANDUM OPINION[1]**

Defendant Joshua Lee Perry was charged with murder (Pen. Code, § 187),[2] with enhancing allegations of prior serious or violent felony convictions (§ 1170, subds. (h)(3)(A), (f)), a prior "three strikes" conviction (§§ 667, 1170.12), probation ineligibility due to prior felony convictions (§ 1203, subd. (e)(4)), and that the charged offense was committed while released on bail. (§ 12022.1)

Approximately one and a half years later, defendant agreed to a negotiated disposition.  The prosecution moved to amend the information to

---

[1]  This appeal is appropriately resolved by way of memorandum opinion pursuant to California Standards of Judicial Administration, section 8.1, subdivisions (1) and (3).

[2]  All further statutory references are to the Penal Code unless otherwise indicated.

add a count of voluntary manslaughter (§ 192, subd. (a)), to which defendant pled no contest. Defendant also admitted the "three strikes" enhancement allegation. The remaining charges and enhancements were dismissed, and the court sentenced defendant to 22 years in state prison.[3]

Defendant subsequently filed a petition for resentencing under section 1170.95, which the trial court denied on the ground section 1170.95 does not apply to convictions for voluntary manslaughter. The only issue defendant raises on appeal is whether section 1170.95 applies to defendants, like him, who pled to voluntary manslaughter to avoid going to trial for murder.

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) amended murder liability under the felony-murder and natural and probable consequences theories. The bill redefined malice under section 188 to require that the principal acted with malice aforethought. Now, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The bill also amended section 189 to provide that a defendant who was not the actual killer and did not have an intent to kill is not liable for felony murder unless he or she "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).)

Senate Bill No. 1437 (2017–2018 Reg. Sess.) also enacted section 1170.95, which authorizes "[a] person convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts" so long as three

---

[3] The court also sentenced defendant to serve a concurrent four-year term for first degree residential burglary (§§ 459, 460), charged and admitted in a different underlying case.

2

conditions are met: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3).) Any petition that fails to make "a prima facie showing that the petitioner falls within the provisions of [section 1170.95]" may be denied without a hearing. (§ 1170.95, subds. (c) & (d).)

Defendant concedes the Courts of Appeal that have addressed the issue have held that section 1170.95 does not apply to individuals who pled to voluntary manslaughter to avoid going to trial for murder. He claims, however, those cases were wrongly decided and not binding on this court.

As Division Two of this court recently explained in *People v. Paige* (2020) 51 Cal.App.5th 194 (*Paige*), read "as a whole, considering both its structure and its language," the statute "cannot reasonably be understood to encompass persons who accept a plea offer in lieu of trial for a crime other than murder. The first paragraph of section 1170.95, subdivision (a) sets forth the basic 'who' and 'what' of the statute—who may seek relief and what they may seek. The 'who' is '[a] person convicted of felony murder or murder under a natural and probable consequences theory' and the 'what' is the opportunity to 'file a petition with the court . . . to have the petitioner's murder conviction vacated.' [Citation.] . . . Given the structure of the statute and the language in the first paragraph of section 1170.95, subdivision (a), the reference to a person who 'accepted a plea offer' in subdivision (a)(2) must

3

necessarily mean a person who accepted a plea to, and was convicted of, first or second degree murder in lieu of a trial at which he could have been convicted of either of those charges. Also relevant are section 1170.95, subdivision (d)(1), which refers to the court determining 'whether to vacate the murder conviction,' and section 1170.95, subdivision (d)(2), which allows the parties to stipulate 'that the petitioner is eligible to have his or her murder conviction vacated.' These provisions also expressly limit their application to murder convictions, and neither they nor any other part of the statute address granting relief from a conviction of any crime other than murder." (*Paige*, at p. 202, fn. & italics omitted, quoting *People v. Turner* (2020) 45 Cal.App.5th 428, 435–436 (*Turner*).)

Division Two therefore agreed, as do we, with *Turner* and other cases that have concluded " 'the petitioning prerequisites and available relief indicate that the Legislature intended to limit relief to those convicted of murder under a theory of felony murder or natural and probable consequences murder' " and " 'section 1170.95 is unambiguous and does not provide relief to persons convicted of manslaughter.' "[4] (*Paige, supra,* 51 Cal.App.5th at p. 202, italics omitted; see *People v. Sanchez* (2020) 48 Cal.App.5th 914, 917–920 (*Sanchez*); *Turner, supra,* 45 Cal.App.5th at pp. 435–436; *People v. Flores* (2020) 44 Cal.App.5th 985, 992–997; *People v. Cervantes* (2020) 44 Cal.App.5th 884, 887 ["The plain language of [section 1170.95] is explicit; its scope is limited to murder convictions."].)

Defendant also claims the legislative history advances his cause, as in *Paige*, "based on a snippet of language from the uncodified section of Senate

---

[4] Defendant claims the court in *Paige* "conced[ed the] statute's ambiguity" It did not. (*Paige, supra,* 51 Cal.App.5th at p. 202.)

4

Bill No. 1437 stating the purpose of the bill is to more equitably sentence offenders 'in accordance with their involvement in *homicides'* (Stats. 2018, ch. 1015, § 1, subd. (b), italics added)." (*Paige, supra,* 51 Cal.App.5th at p. 203.) But this disregards other provisions. "[I]n the same uncodified section of the bill that sets forth its general purposes of fairly addressing culpability and reducing prison overcrowding caused by inequitable sentences, the Legislature also made the following findings. 'It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' ([§ 1170.95], subd. (f). . . .) 'Except as stated in subdivision (e) of Section 189 of the Penal Code, a conviction for murder requires that a person act with malice aforethought. A person's culpability for murder must be premised upon that person's own actions and subjective mens rea.' (*Id.,* subd. (g). . . .)" (*Paige,* at p. 203, italics omitted; see *Turner, supra,* 45 Cal.App.5th at pp. 436–438.)

Defendant next claims denying resentencing to defendants who pled guilty to manslaughter leads to "absurd consequences" in sentencing. Defendant, however, overlooks the significant point that defendants who proceeded to trial and were convicted of murder, were sentenced accordingly, whereas those defendants who pled guilty to lesser charges were sentenced commensurately to lesser crimes. "As the court noted in *Turner,* '[t]he punishment for manslaughter is already less than that imposed for first or second degree murder, and the determinate sentencing ranges of 3, 6, or 11 years for voluntary manslaughter . . . permit a sentencing judge to make punishment commensurate with a defendant's culpability based on

5

aggravating and mitigating factors.' (*Turner*, [*supra*, 45 Cal.App.5th] at p. 439; see § 193, subd. (a).)  Construing section 1170.95 to exclude those convicted of voluntary manslaughter by plea agreement therefore does not 'produce absurdity by undermining the Legislature's goal to calibrate punishment to culpability.' (*Turner*, at p. 439.)" (*Sanchez*, *supra*, 48 Cal.App.5th at pp. 919–920, fn. omitted.)

Lastly, defendant asserts "state and federal equal protection guarantees require that section 1170.95 apply to persons charged with murder who pled to manslaughter." (Capitalization omitted.)  This is so, he claims, because "persons charged with murder who pled to manslaughter are similarly situated to persons convicted of murder" and to "persons charged with first-degree murder who pled to second-degree murder." (Capitalization omitted.)

As the *Paige* court noted, "In *Cervantes*, in an opinion authored by Justice Arthur Gilbert, the Second District rejected a similar argument." (*Paige*, *supra*, 51 Cal.App.5th at p. 205.)  As did *Paige*, we agree with the analysis in *Cervantes* and adopt it here:

" 'The first step in an equal protection analysis is to determine whether the defendant is similarly situated with those who are entitled to the statutory benefit.  [Citation.]  Cervantes was convicted of voluntary manslaughter, a different crime from murder, which carries a different punishment.  Normally "offenders who commit different crimes are not similarly situated" for equal protection purposes.  [Citation.]  "[O]nly those persons who are similarly situated are protected from invidiously disparate treatment."  [Citation.] [¶] . . . [¶]

" 'When the Legislature reforms one area of the law, it is not required to reform other areas of the law.  (*Kasler v. Lockyer* (2000) 23 Cal.4th 472,

6

488. . . .)  It may elect to make reforms " ' "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." ' " (*Ibid*.)  Here the legislative focus was centered on the unfairness of the felony murder rule.  The Legislature could rationally decide to change the law in this area and not be currently concerned with crimes not involved with that rule.  (*Ibid*.)  It also could reasonably decide that the punishment for voluntary manslaughter was appropriate, but the punishment for murder based on the felony murder rule could be excessive and reform was needed only there.  (*Williams v. Illinois* (1970) 399 U.S. 235, 241 . . . ["A State has wide latitude in fixing the punishment for state crimes"].)  Legislators in making this choice could also consider a variety of other factors including the number of prisoners subject to the change and its impact on the "administration of justice."  [Citation.]

" 'The decision not to include manslaughter in section 1170.95 falls within the Legislature's 'line-drawing' authority as a rational choice that is not constitutionally prohibited.  (*People v. Chatman* (2018) 4 Cal.5th 277, 283. . . .)  "[T]he Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses."  (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887. . . .)  A classification is not arbitrary or irrational simply because it is "underinclusive."  (*Ibid*.)  "A criminal defendant has no vested interest ' " in a specific term of imprisonment or in the designation [of] a particular crime [he or she] receives." ' "  (*People v. Turnage* (2012) 55 Cal.4th 62, 74. . . .)  "Courts routinely decline to intrude upon the 'broad discretion' such policy judgments entail."  (*Ibid*.)'  (*Cervantes*, *supra*, 44 Cal.App.5th at pp. 888–889.)"  (*Paige*, *supra*, 51 Cal.App.5th at pp. 205–206.)

Additionally, the court in *Paige* noted: "In *Sanchez*, the court likewise addressed an equal protection challenge to section 1170.95 as it has been interpreted, and agreed with the analysis in *Cervantes*. (See *Sanchez*, *supra*, 48 Cal.App.5th at pp. 920–921.) The *Sanchez* court also rejected an argument similar to one made by Paige . . . [holding:] 'We reject *Sanchez's* assertion that the distinction [between persons convicted of murder under a felony murder or natural and probable consequences doctrine and persons who were charged with murder under one of those theories and pled to voluntary manslaughter] was not reasonable in light of the Legislature's intent to save money on the costs of incarceration. Whether expanding section 1170.95 to include those who pled guilty to voluntary manslaughter would result in more savings is irrelevant. That is exactly the type of fiscal line-drawing and policymaking decision that the Legislature is free to make. ([*People v.*] *Rajanayagam* [2012] 211 Cal.App.4th [42,] 55–56. . . .) It does not demonstrate that it was irrational to distinguish between those convicted of murder by plea and those convicted of voluntary manslaughter by plea.' " (*Paige*, *supra*, 51 Cal.App.5th at p. 206, citing *Sanchez*, at p. 921.)

As in *Paige*, we "agree with the *Cervantes* and *Sanchez* courts' analyses and adopt them here" (*Paige*, *supra*, 51 Cal.App.5th at p. 206), and reject defendant's equal protection claim.

## DISPOSITION

The order denying defendant's petition under section 1170.95 is AFFIRMED.

8

_____

Banke, J.

We concur:

_____

Humes, P.J.

_____

Margulies, J.

A159464, People v. Perry