Filed 4/19/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| In re PAUL MURRAY on Habeas Corpus. | A161687<br><br>(Alameda County<br>Super. Ct. No. 150811) |
| --- | --- |

In 2008, petitioner Paul Murray was sentenced to life in prison without possibility of parole for a first degree special circumstance murder he committed when he was 22 years old. In 2020, he sought a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 on the ground that he was eligible for a Penal Code section 3051 youth offender parole hearing. The trial court denied his request because the terms of section 3051 expressly exclude LWOP offenders who were 18 years old or older at the time of their offense. In this habeas corpus proceeding, petitioner contends section 3051 violates his constitutional right to equal protection by affording juvenile LWOP offenders a youth offender parole hearing but denying such a hearing to youthful LWOP offenders. We conclude there is a rational basis for distinguishing between juvenile and youthful LWOP offenders in this context, and thus deny his petition.

**BACKGROUND**

In 2008, petitioner was sentenced to life in prison without possibility of parole (LWOP) for a first degree special circumstance murder he committed

1

when he was 22 years old.[1]  In 2010, we affirmed his judgment of conviction. (*People v. Murray*, *supra*, A121746.)

On March 16, 2020, petitioner filed a motion for a *Franklin* hearing,[2] contending he was eligible for a youth offender parole hearing under Penal Code section 3051.[3]  The trial court denied his motion because under the terms of section 3051, subdivision (h), "people sentenced to life without the possibility of parole for crimes committed when they were at least 18 years of age but no more than '25 years of age or younger' are not eligible for youth offender parole hearings."  Petitioner appealed, arguing he was not in fact sentenced to LWOP.  Because the record confirmed he did receive an LWOP sentence, we affirmed the trial court's order.[4]  (*People v. Murray* (Mar. 15, 2021, A160981) [nonpub. opn.].)

Meanwhile, on December 30, 2020, petitioner filed a petition for writ of habeas corpus asserting an equal protection violation.  The alleged violation is based on section 3051, subdivision (h), which excludes from the benefits of

---

[1] In our opinion on petitioner's appeal from his judgment of conviction, we provided this summary of his offenses and sentence:  "After pleading no contest to two counts of second degree robbery and admitting that he had a prior felony conviction, defendant Paul Murray was found guilty of first degree special circumstance murder, willful, deliberate and premeditated attempted murder, and being a past-convicted felon in possession of a firearm.  Both the murder and the attempted murder counts included personal firearm use and great bodily injury allegations.  The trial court sentenced defendant to life without the possibility of parole on the murder charge, and stayed execution of sentence on all other counts and all but one of the enhancement allegations."  (*People v. Murray* (May 25, 2010, mod. on denial of rehg., June 14, 2010, A121746) [nonpub. opn.].)

[2] *People v. Franklin*, *supra*, 63 Cal.4th 261.

[3] All statutory references are to the Penal Code.

[4] Petitioner requests that we take judicial notice of the record in appeal No. A160981.  We grant the request.

the statute individuals sentenced to LWOP who were 18 years of age or older at the time of their offense.  According to petitioner, the statute violates his right to equal protection by affording juvenile LWOP offenders (those under 18 at the time of their offense) a youth offender parole hearing while denying youthful LWOP offenders (those 18 to 25 years old at the time of their offense) a hearing.[5]

## DISCUSSION

### Youth Offender Parole Hearings

The origin and evolution of section 3051 have been well and thoroughly summarized by a number of courts.  (See, e.g., *People v. Jackson* (2021) 61 Cal.App.5th 189, 194–195 (*Jackson*); *People v. Acosta* (2021) 60 Cal.App.5th 769, 775–777 (*Acosta*); *In re Williams* (2020) 57 Cal.App.5th 427, 431–433; *In re Jones* (2019) 42 Cal.App.5th 477, 484–485 (conc. opn. of Pollak, J.).)  We quote one such summary at length here, that from *Acosta*:

"The Legislature first enacted section 3051 in 2013 in response to a series of decisions concerning Eighth Amendment limitations on juvenile sentencing.  (See *Graham*[ *v. Florida*] 560 U.S. [48,] 74 [juvenile who commits nonhomicide offense cannot be sentenced to LWOP]; *Miller v. Alabama* (2012) 567 U.S. 460, 465 [juvenile who commits homicide offense cannot be sentenced automatically to LWOP]; *People v. Caballero* (2012) 55 Cal.4th 262, 268 [juvenile cannot be sentenced to functional equivalent of LWOP for a nonhomicide offense].)  These decisions rested in part 'on science and social science' (*Miller*, at p. 471), and noted that 'developments in psychology and brain science continue to show fundamental differences

---

[5] Defendant does not argue an equal protection violation based on the different treatment of youthful offenders who received parole-eligible life sentences and those who received LWOP sentences.

3

between juvenile and adult minds' and in the 'parts of the brain involved in behavior control' (*Graham*, at p. 68; see *Caballero*, at p. 266).

" '[T]he Legislature passed Senate Bill No. 260 [(2013–2014 Reg. Sess.)] explicitly to bring juvenile sentencing into conformity with *Graham*, *Miller*, and *Caballero*.' (*People v. Franklin* (2016) 63 Cal.4th 261, 277.) In enacting section 3051, the Legislature explained that 'youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society.' (Stats. 2013, ch. 312, § 1.) The bill's stated purpose was 'to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in [*Caballero*] and the decisions of the United States Supreme Court in [*Graham* and *Miller*].' (*Ibid.*)

"As originally enacted, section 3051 only afforded a youth parole eligibility hearing to juvenile offenders, not to young adults. (*In re Trejo* (2017) 10 Cal.App.5th 972, 981 & fn. 6.) It also excluded juveniles who were sentenced to LWOP, since they were already eligible for resentencing under section 1170. (Former § 3051, subd. (h) ['This section shall not apply to cases . . . in which an individual is sentenced to' LWOP], as enacted by Stats. 2013, ch. 312, § 4.) In the years that followed, however, the Legislature expanded section 3051's provisions on who is eligible for a youth offender parole hearing, 'recogniz[ing] that the maturity process does not end at 18 and in many cases extends to at least 25 years of age.' (*In re Jones* (2019) 42 Cal.App.5th 477, 484 (conc. opn. of Pollak, J.) (*Jones*).)

"In 2015, the Legislature expanded section 3051 to apply to offenders who committed crimes at the age of 23 or younger. (Former § 3051, subd. (a)(1), added by Stats. 2015, ch. 471, § 1.) The amendment's author cited '[r]ecent scientific evidence on adolescent and young adult development and neuroscience show[ing] that certain areas of the brain—particularly those affecting judgment and decision-making—do not fully develop until the early-to mid-20s.' (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 261 (2015–2016 Reg. Sess.) Apr. 28, 2015, p. 3.)

"In 2017, the Legislature twice amended section 3051. First, the Legislature further increased the age from 23 to 25, such that offenders serving a determinate or life sentence for crimes committed when they were 25 or younger are now eligible for a youth offender parole hearing. (§ 3051, subd. (b); Stats. 2017, ch. 675, § 1.) The amendment's author cited research that the prefrontal cortex, which is responsible for decisionmaking and impulse control, 'doesn't have nearly the functional capacity at age 18 as it does at 25.' (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1308 (2017–2018 Reg. Sess.), as amended Mar. 30, 2017, Apr. 25, 2017, p. 2.)

"That same year, the Legislature also amended section 3051 to allow youth offender parole hearings for juveniles—but not young adults— sentenced to LWOP. (§ 3051, subd. (b)(4); Stats. 2017, ch. 684, § 1.) This amendment was designed to 'bring California into compliance with the constitutional requirements of *Miller* and *Montgomery* [*v. Louisiana* (2016) 577 U.S. 190],' which held that *Miller*'s prohibition on mandatory LWOP sentences for juvenile offenders was retroactive. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 394 (2017–2018 Reg. Sess.) Mar. 21, 2017, p. 4.) The bill sought 'to remedy the now unconstitutional juvenile sentences of life without the possibility of parole,' without the need for 'a resentencing

5

hearing, which is time-consuming, expensive, and subject to extended appeals.' (*Id.* at p. 3.)

"Thus, in its current form, section 3051 'permit[s] the reevaluation of the fitness to return to society of persons who committed serious offenses prior to reaching full cognitive and emotional maturity,' unless the person was 'between 18 and 25 years of age when they committed their offense [and] sentenced to life without possibility of parole.' (*Jones, supra*, 42 Cal.App.5th at p. 485 (conc. opn. of Pollak, J.).)  It therefore 'distinguishes both between those who committed their offenses under 18 years of age and those between 18 and 25 years of age, and between offenders 18 to 25 years of age sentenced to prison terms with the possibility of parole and those in the same age group who have been sentenced to life without the possibility of parole.' (*Id.* at p. 483 (conc. opn. of Pollak, J.).)"[6]  (*Acosta, supra*, 60 Cal.App.5th at pp. 775–777, footnotes omitted.)

**Equal Protection Principles**

"The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee all persons the equal protection of the laws." (*People v. Edwards*, *supra*, 34 Cal.App.5th at p. 195.)  "The right to equal protection of the law is violated when 'the government . . . treat[s] a [similarly situated] group of people unequally without some justification.' " (*People v. Love* (2020) 55 Cal.App.5th 273, 287.)

---

[6] Section 3051 also excludes one strike offenders.  (See §§ 667.61, 3051, subd. (h).)  There is a split of authority as to whether that exclusion violates equal protection guarantees.  (See *People v. Williams* (2020) 47 Cal.App.5th 475, 490, review granted July 22, 2020, S262191 [no equal protection violation]; *People v. Edwards* (2019) 34 Cal.App.5th 183, 197, review den. July 10, 2019 [equal protection violation].)

6

The principles by which we evaluate a claimed equal protection violation are well established, as summarized, for example, by our Supreme Court in *People v. Chatman* (2018) 4 Cal.5th 277: "In order to decide whether a statutory distinction is so devoid of even minimal rationality that it is unconstitutional as a matter of equal protection, we typically ask two questions. We first ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner. (*People v. McKee* [(2010)] 47 Cal.4th [1172,] 1202.) If we deem the groups at issue similarly situated in all material respects, we consider whether the challenged classification ultimately bears a rational relationship to a legitimate state purpose. (*Johnson* [*v. Department of Justice* (2015)] 60 Cal.4th [871,] 881.) A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable. (See *ibid.*; *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th 1118, 1140 [holding that ' " 'a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification' " '].) The underlying rationale for a statutory classification need not have been ' "ever actually articulated" ' by lawmakers, and it does not need to ' "be empirically substantiated." ' (*Johnson*, at p. 881.) Nor does the logic behind a potential justification need to be persuasive or sensible—rather than simply rational. (See *ibid.*)" (*People v. Chatman, supra*, 4 Cal.5th at p. 289; accord, *Jackson, supra*, 61 Cal.App.5th at pp. 196–198; *Acosta, supra*, 60 Cal.App.5th at pp. 777–778.)

7

The " 'rational basis' scrutiny is exceedingly deferential:  A law will be upheld as long as a court can 'speculat[e]' any rational reason for the resulting differential treatment, regardless of whether the 'speculation has "a foundation in the record," ' regardless of whether it can be 'empirically substantiated,' and regardless of whether the Legislature ever 'articulated' that reason when enacting the law."  (*People v. Love*, *supra*, 55 Cal.App.5th at p. 287, quoting *People v. Turnage* (2012) 55 Cal.4th 62, 74.)

**Petitioner Has Not Demonstrated an Equal Protection Violation**

As noted, petitioner asserts that section 3051 violates his right to equal protection because it grants youth offender parole hearings to individuals sentenced to LWOP for offenses they committed when under the age of 18 but denies such a hearing to individuals sentenced to LWOP for offenses committed as an adult.  We review this claim de novo (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208; *People v. Ramos* (1997) 15 Cal.4th 1133, 1154), and we conclude it lacks merit.  Even if we assume petitioner has demonstrated that juvenile and youthful LWOP offenders are similarly situated, the claim must fail because petitioner has not demonstrated there is no rational basis for treating the two groups in an unequal manner.

In deciding the eligibility of LWOP offenders for a section 3051 youth offender parole hearing, the Legislature drew the line at adulthood:  those under 18 years old at the time of their offense are eligible, those 18 years old and older are not.  When it comes to criminal sentencing, the United States and California Supreme Courts have found the line drawn between juveniles and nonjuveniles to be a rational one.  (See, e.g., *Miller v. Alabama, supra*, 567 U.S. at p. 471 ["children are constitutionally different from adults for purposes of sentencing"]; *Roper v. Simmons* (2005) 543 U.S. 551, 574 ["The

age of 18 is the point where society draws the line for many purposes between childhood and adulthood"]; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1380 [the age of 18 "is the line the [United States Supreme Court] has drawn in its Eighth Amendment jurisprudence"]; *People v. Gamache* (2010) 48 Cal.4th 347, 405 ["We previously have rejected the argument that a death penalty scheme that treats differently those who are 18 years of age and older, and those younger than 18, violates equal protection"].) While section 3051 is not a sentencing statute per se, it nevertheless impacts the length of sentence served. We thus believe that in this context, the line between juveniles and adults remains a rational one. (See *Jackson*, *supra*, 61 Cal.App.5th at pp. 196–198 [reaching the same conclusion]; *Acosta*, *supra*, 60 Cal.App.5th at pp. 779–780 [same].)

We recognize the concerns expressed by others before us, including Justice Liu and several of our colleagues on the Court of Appeal, whose thoughtful observations recognize the tension between section 3051 and the United States Supreme Court decisions in *Miller v. Alabama*, *supra*, 567 U.S. 460, *Graham v. Florida*, *supra*, 560 U.S. 48, and *Roper v. Simmons*, *supra*, 543 U.S. 551. For example, in a statement on denial of review, Justice Liu opines that "section 3051's parole eligibility scheme—specifically, its exclusion of persons sentenced to life without parole for offenses committed between ages 18 and 25—stands in 'tension' " with *Miller*. (*People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1042.) Likewise, Justice Segal, concurring in his own opinion, notes that "section 3051's current treatment of young adult offenders . . . conflicts with the California Supreme Court decisions that adopted and extended *Miller*." (*Id.* at p. 1039.) Justice Goethals, expressing "reservations about our analysis," notes the public policy purpose of the statute—"to permit the eventual evaluation of a young

9

offender who committed a serious offense before reaching full cognitive and emotional maturity with an eye toward determining whether that individual has become fit to return to society"— and "question[s] whether the exclusion for young adult LWOP offenders from this process is consistent with the statute's purpose and legislative history." (*Acosta*, *supra*, 60 Cal.App.5th at pp. 780–781.)  Finally, Presiding Justice Pollak, joined by Justice Streeter, observes that "section 3051 is designed to permit the reevaluation of the fitness to return to society of persons who committed serious offenses prior to reaching full cognitive and emotional maturity.  Yet, subdivision (h) denies this reevaluation to those between 18 and 25 years of age when they committed their offense but were sentenced to life without possibility of parole." (*In re Jones*, *supra*, 42 Cal.App.5th at p. 485.)

We, too, share the concerns and recognize the tension.  That said, it does not amount to an equal protection violation, and it is not our role to "second-guess the wisdom, fairness, or logic of the law." (*People v. Turnage, supra*, 55 Cal.4th at p. 74.)  But we join the others in encouraging the Legislature to revisit where it has drawn the line with section 3051, subdivision (h), and to reconsider whether a youthful offender who was sentenced to LWOP for a crime committed at an age while cognitive brain development was still ongoing should be afforded the possibility of release like those under 18 years old at the time of their offense.

## DISPOSITION

The petition for writ of habeas corpus is denied.

_____
Richman, Acting P.J.

We concur:

_____
Stewart, J.

_____
Miller, J.

*In re Paul Murray on Habeas Corpus* (A161687)

11

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable Morris Jacobson |
| Attorney for Petitioner, Paul Murray: | Under Appointment of the Court of Appeal, Law Offices of John F. Schuck, John F. Schuck |
| Attorneys for Respondent, The People of the State of California: | Xavier Becerra, Attorney General of California, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Rene A. Chacon, Supervising Deputy Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General. |