Filed 12/29/21  P. v. Trotter CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY GRAHAM TROTTER,<br><br>Defendant and Appellant. | B310316<br><br>(Los Angeles County<br>Super. Ct. No. A570665) |

APPEAL from an order of the Superior Court of Los Angeles County, Terry Lee Smerling, Judge.  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Roberta L. Davis and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Anthony Graham Trotter appeals the trial court's denial of his request for a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) to preserve youth-related mitigation evidence for his application to the Governor for commutation of sentence.  The trial court denied the motion, finding Trotter was not entitled to a *Franklin* proceeding because Penal Code[1] section 3051, subdivision (h) excluded offenders, like Trotter, who are serving life sentences without the possibility of parole (LWOP) from the youth offender parole hearing process and because section 4801, subdivision (a) does not permit a *Franklin* proceeding to aid in a petition for commutation or pardon.  We affirm.

## BACKGROUND

Trotter admitted the murder and robbery of Charlene Belmer Hartsough while burglarizing her home, and he admitted personal use of a dangerous and deadly weapon.  Trotter entered Hartsough's home on the morning of April 23, 1986 by breaking a living room window to obtain money for drugs.  While Trotter was in the middle of the burglary, Hartsough returned home. Trotter killed Hartsough by strangling her with a telephone cord and bludgeoning her head with a candlestick.  Trotter turned himself in to the police before the crime was discovered.  (*People v. Trotter* (Oct. 29, 2003, B160437) [nonpub. opn.] at p. 2 (*Trotter I*).)

Trotter initially pleaded guilty to first degree murder (§ 187, subd. (a); count 1), residential burglary (§ 459; count 2), and robbery (§ 211; count 3).  Trotter admitted the truth of

---

[1] All further statutory references are to the Penal Code.

special circumstance allegations he committed the murder during a burglary and robbery (§ 190.2, subd. (a)(17)) and he personally used a deadly and dangerous weapon (§ 12022, subd. (b)). Trotter's subsequent petition for writ of habeas corpus was granted, and the district court ordered a trial on the special-circumstance allegations, including the element of intent to kill. A jury found the special circumstance allegations true, and Trotter was sentenced to LWOP. We affirmed the judgment. (*Trotter I*, *supra*, B160437 at p. 2.)

In 2020, Trotter petitioned for resentencing under section 1170.95, requesting the trial court vacate his murder conviction. The court denied the petition ex parte based on a finding Trotter was the actual killer and actual killers are not eligible for resentencing under sections 1170.95 and 189, subdivision (e)(1). We affirmed the trial court's denial of Trotter's section 1170.95 petition. (*People v. Trotter* (Sep. 3, 2021, B309637) [nonpub. opn.].)

In May 2020, Trotter signed an application for commutation of sentence under section 4801, subdivision (a).[2] Because Trotter was under 26 years old when he committed the crimes,[3] in December 2020, Trotter requested a *Franklin*

---

[2] Section 4801, subdivision (a) reads in part: "The Board . . . may report to the Governor, from time to time, the names of any and all persons imprisoned in any state prison who, in its judgment, ought to have a commutation of sentence or be pardoned and set at liberty on account of good conduct, or unusual term of sentence, or any other cause, including evidence of intimate partner battering and its effects."

[3] Trotter was born in 1962 and was 24 years old when the crimes occurred in 1986.

proceeding to make a record of youth-related mitigation evidence relative to his application. He also requested the appointment of counsel. The trial court denied both requests ex parte, concluding Trotter was not entitled to a *Franklin* proceeding because section 3051, subdivision (h) excluded those offenders, like Trotter, who were sentenced to LWOP for offenses committed after they were 18 years old, from the youth offender parole hearing process. The court also found section 4801, subdivision (a) did not provide for a *Franklin* proceeding for offenders, youthful or otherwise, in the aid of a petition for commutation or pardon.

Trotter appealed.

## DISCUSSION

Trotter contends section 3051, subdivision (h), as applied, denied him his constitutional right to equal protection of law and he was still entitled to a *Franklin* proceeding pursuant to section 4801, subdivision (a) to preserve youth-related mitigating evidence for his application for commutation of sentence.

I.  Forfeiture

Initially, the People argue Trotter has forfeited his equal protection claim because he did not present it in his request for a *Franklin* proceeding.

A constitutional right, including the right to equal protection, may be forfeited in a criminal case by the failure to make a timely assertion of the right in the lower court. (*People v. McCullough* (2013) 56 Cal.4th 589, 593; *People v. Nolasco* (2021) 67 Cal.App.5th 209, 217.) However, we have discretion to consider a claim on the merits if it presents a pure question of law and it is unclear whether the appellant had the opportunity

4

to raise the argument below.  (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7.)  That is the case here.  Trotter's equal protection challenge raises a pure question of law, and he did not have the opportunity to argue the point below, because the court denied ex parte his request for a *Franklin* proceeding and did not appoint counsel.

We exercise our discretion and consider the merits of the appeal.

II.    Trotter Has Not Established Section 3051 Denies Him Equal Protection of the Law

A.    *Section 3051*

The Legislature enacted section 3051 in 2013 in response to a series of cases that delineated constitutional limits on the length of sentences for youth offenders.[4]  (See Stats. 2013, ch. 312, § 1; *Franklin, supra*, 63 Cal.4th at p. 277.)  The statute gives certain youth offenders the opportunity for parole in their 15th, 20th, or 25th year of incarceration depending on the length of sentence they are serving for their "controlling offense."[5] (§ 3051, subds. (a)(2)(B), (b)(1)–(4); *Franklin*, at p. 277.)

"As originally enacted, section 3051 only afforded a youth parole eligibility hearing to juvenile offenders, not to young

---

[4] We refer to youth offenders who committed their crimes before the age of 18 as juveniles and those who committed their crimes after the age of 18 but before the age of 26 as young adults.

[5] " 'Controlling offense' " is the offense or enhancement for which the sentencing court imposed the longest term of imprisonment.  (§ 3051, subd. (a)(2)(B).)

adults. [Citation.] It also excluded juveniles who were sentenced to LWOP, since they were already eligible for resentencing under section 1170. [Citation.] In the years that followed, however, the Legislature expanded section 3051's provisions on who is eligible for a youth offender parole hearing, 'recogniz[ing] that the maturity process does not end at 18 and in many cases extends to at least 25 years of age.'" (*People v. Acosta* (2021) 60 Cal.App.5th 769, 776.) Grounded in scientific research in neuroscience showing areas of the brain affecting judgment did not develop until the early-to-mid-20's, the subsequent amendments recognized that, like juveniles, young adults are not yet fully matured, and have a lower degree of culpability and an increased potential for rehabilitation compared to adult offenders. (*In re Jones* (2019) 42 Cal.App.5th 477, 485.)

However, section 3051 continues to exclude from the youth offender parole hearing process several categories of youth offenders, including young adults sentenced to LWOP. In its current form, "section 3051 'permit[s] the reevaluation of the fitness to return to society of persons who committed serious offenses prior to reaching full cognitive and emotional maturity,' unless the person was 'between 18 and 25 years of age when they committed their offense [and] sentenced to [LWOP].' [Citation.] It therefore 'distinguishes both between those who committed their offenses under 18 years of age and those between 18 and 25 years of age, and between offenders 18 to 25 years of age sentenced to prison terms with the possibility of parole and those in the same age group who have been sentenced to [LWOP].'" (*People v. Acosta, supra,* 60 Cal.App.5th at p. 777.)

After the enactment of section 3051, our Supreme Court decided *Franklin,* which created a process for those offenders who

6

qualified for a youth offender parole hearing under section 3051 to preserve youth-related mitigation evidence. (*Franklin, supra,* 63 Cal.4th at pp. 283–284.) A *Franklin* proceeding gives " 'an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board [of Parole Hearings (Board)], years later, may properly discharge its obligation to "give great weight to" youth-related factors (§ 4801, subd. (c)) in determining whether the offender is "fit to rejoin society" ' " despite having committed a serious crime 'while he was a child in the eyes of the law. (*In re Cook* (2019) 7 Cal.5th 439, 449.)

    B.    *Equal Protection*

"Both the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee to all persons the equal protection of the laws. The right to equal protection of the laws is violated when 'the government . . . treat[s] a [similarly situated] group of people unequally without some justification.' [Citations.] 'The California equal protection clause offers substantially similar protection to the federal equal protection clause.' " (*People v. Jackson* (2021) 61 Cal.App.5th 189, 195.)

"To succeed on an equal protection claim, appellants must first show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." (*People v. Edwards* (2019) 34 Cal.App.5th 183, 195.) This initial inquiry is not whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged. (*People v. Morales* (2016) 63 Cal.4th 399, 408.)

If the appellant can establish a class of criminal defendants is similarly situated to another class of defendants who are sentenced differently, we look to determine whether there is a rational basis for the difference. (*People v. Edwards*, *supra*, 34 Cal.App.5th at p. 195.) Under this highly deferential standard, "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) While the realities of the subject matter cannot be completely ignored, "[a] law will be upheld as long as a court can 'speculat[e]' any rational reason for the resulting differential treatment, regardless of whether the 'speculation has "a foundation in the record," ' regardless of whether it can be 'empirically substantiated,' and regardless of whether the Legislature ever 'articulated' that reason when enacting the law." (*People v. Love* (2020) 55 Cal.App.5th 273, 287.) Thus, to raise a successful rational basis challenge, a party must negate " ' "every conceivable basis" ' that might support the disputed statutory disparity." (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.) "It is both the prerogative and the duty of the Legislature to define degrees of culpability and punishment, and to distinguish between crimes in this regard. [Citation.] Courts routinely decline to intrude upon the 'broad discretion' such policy judgments entail. [Citation.] Equal protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law." (*Turnage*, at p. 74.)

C.     *Analysis*

We independently review Trotter's challenge to section 3051. (*People v. Jackson*, *supra*, 61 Cal.App.5th at p. 195.)

8

### 1. Similarly Situated

Under section 3051, subdivision (h), Trotter is ineligible for a *Franklin* proceeding because he was sentenced to LWOP for a first degree special circumstance murder he committed at age 24. On appeal, Trotter contends the trial court should treat him as similarly situated to those who are eligible for a *Franklin* proceeding.

We decline the invitation. Trotter is not similarly situated to those eligible for a *Franklin* proceeding, because children are constitutionally different from adults for purposes of sentencing (see *In re Williams* (2020) 57 Cal.App.5th 427, 435, fn. 5) and a young adult convicted of special circumstance murder is more culpable and has committed a more serious crime than a young adult convicted of nonspecial circumstance murder (see *id.* at p. 435; *In re Jones*, *supra*, 42 Cal.App.5th at p. 481; *People v. Jackson*, *supra*, 61 Cal.App.5th at p. 199).

### 2. Rational Basis

Even assuming arguendo juveniles and young adults sentenced to LWOP are similarly situated, Trotter cannot show section 3051's exclusion of young adults sentenced to LWOP from the youth offender parole hearing process lacks a rational basis. (See *People v. Acosta*, *supra*, 60 Cal.App.5th at p. 779; *People v. Morales* (2021) 67 Cal.App.5th 326, 347; *In re Williams*, *supra*, 57 Cal.App.5th at p. 436.)

First, section 3051 was enacted to comply with Supreme Court precedent which articulated the constitutional limits on sentencing young offenders. While LWOP sentences for juveniles were held unconstitutional in *Miller v. Alabama* (2012) 567 U.S. 460, there is no corresponding case limiting LWOP sentences for

young adults. (*People v. Morales*, *supra*, 67 Cal.App.5th at p. 349 [recognizing LWOP sentences for youthful offenders remain constitutional].) Thus, the distinction between LWOP prisoners who committed their crimes as juveniles and those who did so as young adults is rationally related to the state's compelling interest in complying with the Supreme Court's jurisprudence. (*People v. Acosta*, *supra*, 60 Cal.App.5th at pp. 777, 779–780; *Morales*, at p. 349.)

Second, although the Legislature recognized cognitive development and maturity continues into an individual's mid-20's, this does not preclude it from including juvenile prisoners serving LWOP sentences while excluding young adults from section 3051's youth offender parole hearing process. As the People note, drawing the line at age 18 is " 'the point where society draws the line for many purposes between childhood and adulthood.' " (*People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482; *Roper v. Simmons* (2005) 543 U.S. 551, 574.) Thus, the age threshold is rational and not arbitrary. (*People v. Jackson*, *supra*, 61 Cal.App.5th at pp. 196–197; *In re Jones*, *supra*, 42 Cal.App.5th at p. 483.)

Third, young adult offenders sentenced to LWOP may be treated differently from young adult offenders serving non-LWOP sentences because of "the severity of the crime committed." (*People v. Acosta*, *supra*, 60 Cal.App.5th at p. 780; see *People v. Jackson*, *supra*, 61 Cal.App.5th at pp. 199–200.) Because the Legislature has reserved LWOP sentences for only the most " 'morally depraved and . . . injurious' " crimes, it could have reasonably concluded young adults who commit those crimes should be incarcerated for life despite their lack of maturity and neurological development. (*Acosta*, at p. 780.)

Trotter's reliance on the concurring opinions in *People v. Jackson* and *In re Jones* is unpersuasive. Concurring opinions are not precedential authority. (*People v. Franz* (2001) 88 Cal.App.4th 1426, 1442.)

Published cases that have addressed whether section 3051 violates equal protection by excluding young adults sentenced to LWOP have held that it does not. (See, e.g., *People v. Jackson*, *supra*, 61 Cal.App.5th at p. 200; *People v. Acosta*, *supra*, 60 Cal.App.5th at p. 780; *In re Jones*, *supra*, 42 Cal.App.5th at p. 483; *People v. Morales*, *supra*, 67 Cal.App.5th at p. 349; *In re Williams*, *supra*, 57 Cal.App.5th at p. 436; *In re Murray* (2021) 63 Cal.App.5th 184, 192; *People v. Sands* (2021) 70 Cal.App.5th 193, 204.)

Accordingly, there is a rational basis for excluding young adult LWOP offenders from the youth offender parole hearing process, and Trotter's equal protection challenge fails.

III.    Trotter Has Not Established Section 4801 Entitles Him to a *Franklin* Proceeding

Trotter contends even if section 3051 does not violate his equal protection rights, the trial court still erred in denying his request for a *Franklin* proceeding. Trotter argues section 4801, subdivision (a) contemplates a *Franklin* proceeding to preserve youth-related mitigation evidence to support his application to the Governor for commutation of sentence.

Trotter's contention raises a pure question of statutory interpretation; thus, our review is de novo. (*People v. Galvan* (2008) 168 Cal.App.4th 846, 852.)

Section 4801, subdivision (a) does not authorize a *Franklin* proceeding. Rather, it states the Board may report to the Governor the names of prisoners who, in the Board's judgment,

11

should have their sentences commuted due to "good conduct, or unusual term of sentence, or any other cause." (§ 4801, subd. (a).) A *Franklin* proceeding is derived from section 4801, subdivision (c), which only requires the Board to consider youth-related mitigating evidence that would be the subject of a *Franklin* proceeding in evaluating a prisoner's suitability for parole, not for a commutation of sentence.

As such, the trial court correctly determined section 4801 did not authorize a *Franklin* proceeding to support Trotter's application for commutation.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


KNILL, J.*


We concur:


LAVIN, Acting P. J.


EGERTON, J

---

\* Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.