Filed 6/1/23  P. v. Anchondo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GABRIEL ANCHONDO,<br><br>    Defendant and Appellant. | F084372<br><br>(Super. Ct. No. VCF109724-03)<br><br>**OPINION** |

-ooOoo-

## THE COURT\*

APPEAL from an order of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Galen N. Farris, Lewis A. Martinez and Louis M. Vasquez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, A.P.J., Franson, J. and DeSantos, J.

In 2004, defendant Gabriel Morales Anchondo was convicted by a jury of first degree murder with a gang special circumstance and a firearm enhancement.[1] Defendant was 20 years of age at the time he committed the offense. He was sentenced to a total term of life without the possibility of parole (LWOP) plus 25 years to life. In 2022, defendant requested a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), to create a record of the features of his youth that contributed to the commission of his offense for use at a possible youth offender parole hearing. The trial court denied the motion because defendant was sentenced to LWOP, rendering him ineligible for a youth offender parole hearing. Defendant argues that the denial of his request for a *Franklin* hearing based on his LWOP sentence constituted a violation of the equal protection of the law. The People disagree. We affirm.

## PROCEDURAL SUMMARY

On April 1, 2004, the Tulare County District Attorney filed an amended information charging defendant with the murder of John Acevedo (Pen. Code, § 187, subd. (a);[2] count 1). As to count 1, the information further alleged defendant committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), was an active member of a criminal street gang carrying out the offense to further gang activity (§ 190.2, subd. (a)(22)) (the special circumstance allegation), personally used a firearm (§ 12022.5, subd. (a)(1)), and personally discharged a firearm causing death (§ 12022.53, subd. (d)).

---

[1]  A gang enhancement was also found true but was later vacated by this court on appeal. The People request that we take judicial notice of our prior opinion in *People v. Anchondo* (Nov. 21, 2006, F047198) [nonpub. opn.], vacating the gang enhancement but otherwise affirming the judgment. Because the People's request is unopposed and because that opinion is relevant to the procedural background of this case, the request for judicial notice is granted. (Evid. Code, §§ 452, subd. (d), 459, subds. (a)–(c).)

[2]  All further statutory references are to the Penal Code.

2.

On November 23, 2004, the jury found defendant guilty on count 1 and found the enhancement allegations and special circumstance allegation true.

On January 5, 2005, the trial court sentenced defendant to an aggregate term of LWOP plus 25 years to life plus 10 years as follows: on count 1, LWOP, plus a 25-year-to-life enhancement for personal use of a firearm causing death (§ 12022.53, subd. (d)), plus a 10-year gang enhancement (§ 186.22, subd. (b)(1)).

On November 21, 2006, this court vacated defendant's 10-year gang enhancement but otherwise affirmed the judgment. (*People v. Anchondo*, *supra*, F047198.)

On April 28, 2022, defendant requested a *Franklin* hearing pursuant to section 1203.01, to create a record of the features of his youth that contributed to his offense for use at a later youth offender parole hearing.

On May 4, 2022, the trial court denied defendant's request because defendant "[w]as sentenced to life without parole for a murder committed when [defendant was] an adult. Therefore, [he was] not eligible for a youth offender parole hearing."

On May 16, 2022, defendant filed a notice of appeal.

## DISCUSSION[3]

The law provides for a youth offender parole hearing for persons sentenced to indeterminate life sentences with the possibility of parole if they were between age 18 and 25 when they committed the offense.[4] However, the law does not provide for a youth offender parole hearing for a person in the same age group who was sentenced to LWOP. Defendant is in the latter category—he was 20 years old when he committed the offenses at issue and he was sentenced to LWOP. He contends that the discrepancy in

---

[3]    Because defendant raises only postconviction, sentencing-related issues, the facts underlying the offenses are not relevant and are omitted from this opinion.

[4]    The law also provides for youth offender parole hearings for those under the age of 18 when the offense was committed, but defendant does not contend that he is similarly situated with that group.

treatment between the two groups violates equal protection principles. The People disagree, as do we.

## I. Youth Offender Parole Hearing and *Franklin* Hearing Framework

The parties agree, as do we, regarding the basic parameters of youth offender parole hearings and the *Franklin* hearing framework: In 2013, the Legislature enacted law, effective January 1, 2014, providing a parole eligibility mechanism for juvenile offenders. (*Franklin*, *supra*, 63 Cal.4th at p. 277; former § 3051; Stats. 2013, ch. 312, § 4.) Its purpose was "to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity." (Stats. 2013, ch. 312, § 1.) The version of section 3051 effective on January 1, 2014, applied only to juvenile offenders sentenced to indeterminate life terms with the possibility of parole. (§ 3051, former subd. (b); Stats. 2013, ch. 312, § 4.) On its face, it did not apply to juvenile offenders sentenced to LWOP or those over age 18 at the time of the offense. (§ 3051, former subds. (a)(1), (b); Stats. 2013, ch. 312, § 4.)

In 2015, section 3051 was amended to extend eligibility to youthful offenders under age 23. (§ 3051, former subds. (a)(1), (b); Stats. 2015, ch. 471, § 1.) Then in 2017, section 3051 was amended again to extend eligibility to youthful offenders under age 25. (§ 3051, former subds. (a)(1), (b); Stats. 2017, ch. 675, § 1.)

Presently, "section 3051 … requires the Board [of Parole Hearings] to conduct a 'youth offender parole hearing' during the 15th, 20th, or 25th year of a juvenile offender's incarceration. [Citation.] The date of the hearing depends on the offender's ' "[c]ontrolling offense," ' which is defined as 'the offense or enhancement for which any sentencing court imposed the longest term of imprisonment.' " (*Franklin*, *supra*, 63 Cal.4th at p. 277; § 3051, subd. (a)(2)(B).) "A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a determinate sentence shall be eligible for release on parole at a

youth offender parole hearing during the person's 15th year of incarceration"; persons sentenced to indeterminate terms of less than 25 years to life are eligible at their 20th year of incarceration; and persons sentenced to indeterminate terms of greater than 25 years to life are eligible at their 25th year of incarceration. (§ 3051, subd. (b)(1)–(3).) Section 3051 does not create youth offender parole hearing eligibility for a person sentenced to a LWOP sentence.

Against this backdrop, our Supreme Court has established a procedure by which an inmate who will be entitled to a youth offender parole hearing may request a hearing (a *Franklin* hearing) to preserve evidence that may be used at the eventual youth offender parole hearing. (*Franklin*, *supra*, 63 Cal.4th at p. 269; *In re Cook* (2019) 7 Cal.5th 439, 450–451; see *Cook*, at pp. 453, 458 [the proper avenue for inmates who seek to preserve youth-related evidence following a final judgment is to file a motion under section 1203.01]; § 1203.01.) A person who cannot prove eligibility for a youth offender parole hearing is not entitled to a *Franklin* hearing. (*Cook*, at p. 458.)

## II. Equal Protection Principles

"Both the state and federal Constitutions extend to persons the equal protection of the law." (*People v. Chatman* (2018) 4 Cal.5th 277, 287.) An equal protection challenge requires a showing that the government has adopted a classification affecting two or more similarly situated groups in an unequal manner. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836.) The level of scrutiny we apply depends on the type of classification. (*Ibid.*) Statutes, such as the one in the case, neither involving a suspect class like race or national origin nor those impinging on fundamental rights, are subject to the minimum equal protection standard—rational basis review. (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)

Under the rational basis review, "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " (*People v. Turnage*, *supra*, 55 Cal.4th at p. 74.) "To

5.

successfully challenge a law on equal protection grounds, the defendant must negate
' " 'every conceivable basis' " ' on which 'the disputed statutory disparity' might be
supported. [Citation.] 'If a plausible basis exists for the disparity, "[e]qual protection
analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of
the law." ' " (*People v. Acosta* (2021) 60 Cal.App.5th 769, 778 (*Acosta*).) The majority
of published case law on this issue has rejected the defendants' arguments and upheld the
constitutionality of the provision. (See, e.g., *People v. Jackson* (2021) 61 Cal.App.5th
189; *Acosta*, at p. 769; *In re Williams* (2020) 57 Cal.App.5th 427.)

Rational basis review requires courts to ask two questions: (1) " 'whether the state
adopted a classification affecting two or more groups that are similarly situated in an
unequal manner' " and (2) " 'whether the challenged classification ultimately bears a
rational relationship to a legitimate state purpose.' " (*People v. Ngo* (2023) 89
Cal.App.5th 116, 122 (*Ngo*).) " 'A classification in a statute is presumed rational until
the challenger shows that no rational basis for the unequal treatment is reasonably
conceivable. [Citations.] The underlying rationale for a statutory classification need not
have been " 'ever actually articulated' " by lawmakers, and it does not need to " 'be
empirically substantiated.' " [Citation.] Nor does the logic behind a potential
justification need to be persuasive or sensible—rather than simply rational. [Citation.]' "
(*Id.* at pp. 122–123.)

**III. Analysis**

Defendant contends that people ages 18 to 25 who are sentenced to life with the
possibility of parole are similarly situated to those of the same age who are sentenced to
LWOP for purposes of *Franklin* hearing eligibility. We assume without deciding that
defendant is correct. Even with that assumption, defendant's claim fails because there is
a rational basis for different treatment of the two groups.

As an initial matter, section 3051 creates a mechanism for a youth offender *parole*
hearing. A person sentenced to LWOP is definitionally ineligible for parole. It would

make little sense to provide defendant a *Franklin* hearing for a youth offender parole hearing for which he will never be eligible.

There also exists a rational basis to permit youth offender parole hearings to those sentenced to indeterminate life sentences but not those sentenced to LWOP—level of culpability. A defendant sentenced to LWOP was necessarily convicted of special circumstance murder. The Legislature could rationally have concluded that crimes for which a defendant can be sentenced to life with the possibility of parole, such as first degree murder without special circumstances, are "less grave" (*People v. Sands* (2021) 70 Cal.App.5th 193, 204) or less morally culpable (*Ngo, supra*, 89 Cal.App.5th at p. 124) than special circumstance murder. " ' "It is the prerogative, indeed the duty, of the Legislature to recognize degrees of culpability when drafting a Penal Code." [Citation.]' " (*Ngo*, at p. 124.) On that basis, most courts have rejected the claim defendant makes here. (*Ibid.*; *Sands*, at pp. 204–205; *People v. Morales* (2021) 67 Cal.App.5th 326, 347–349; *People v. Jackson, supra*, 61 Cal.App.5th at pp. 199–200; *Acosta, supra*, 60 Cal.App.5th at pp. 780–781; *In re Williams, supra*, 57 Cal.App.5th at pp. 433–436.) We join them.

We recognize that one court has found that the different treatment at issue in this case violated equal protection principles. (*People v. Hardin* (2022) 84 Cal.App.5th 273, review granted Jan. 11, 2023, S277487.) The *Hardin* court concluded that "[v]iewed in light of section 3051's intended purpose of permitting a determination whether a person who committed a serious or violent crime between the age of 18 and 25 has sufficiently matured and outgrown the youthful impulses that led to the commission of the offense, an individual serving a parole-eligible life sentence and a person who committed an offense at the same age serving a sentence of life without parole are similarly situated." (*Hardin*, at p. 287.) It then further concluded that "if, as the Legislature stated, the goal of section 3051 was to apply the … youth-related mitigating factors to young adults up to the age of 26 in light of neuroscience research that demonstrated the human brain continues to

7.

develop into a person's mid-20's, and thus to permit youth offenders a meaningful opportunity for parole if they demonstrate increased maturity and impulse control, then for that purpose there is no plausible basis for distinguishing between same-age offenders based solely on the crime they committed." (*Hardin*, at p. 288.)

As discussed above, we conclude that the extreme level of culpability required for a LWOP sentence provides a rational basis for distinction between the two groups at issue.[5] We therefore disagree with *Hardin*, and agree with the majority of courts in finding that a rational basis exists to distinguish between offenders 18 to 25 who are sentenced to life with the possibility of parole and offenders 18 to 25 who are sentence to LWOP with respect to granting a youth offender parole hearing.

Because defendant was not eligible for a youth offender parole hearing, denial of defendant's request for a *Franklin* hearing was not error. Because a rational basis existed

---

[5]     We recognize that the *Hardin* court rejected the "relative culpability" basis that this court and most other courts have accepted. It concluded that a person who shot and killed a person one day and then robbed a person the following day has committed no less severe crimes than a person who kills a person during a robbery (see § 190.2, subd. (a)(17)(A) [robbery special circumstance]). (*People v. Hardin*, *supra*, 84 Cal.App.5th at p. 289, review granted Jan. 11, 2023, S277487.) We agree with the *Ngo* court's response to that conclusion: "Equal protection … allows … *incomplete* regulation. ' "[W]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made." [Citation.] "A classification is not arbitrary or irrational simply because there is an 'imperfect fit between means and ends' " [citation], or "because it may be 'to some extent both underinclusive and overinclusive' " [citation]. Consequently, any plausible reason for distinguishing between [two classes] *need not exist* in every scenario in which the statutes might apply.' " (*Ngo*, *supra*, 89 Cal.App.5th at p. 126.) Moreover, the Legislature could rationally have distinguished between de facto LWOP sentences— indeterminate life terms of, for instance, 125 years to life—and de jure LWOP sentences as a measure of culpability. (*Ibid*.) "[I]n light of the many combinations of circumstances that could result in a de facto LWOP sentence, [the Legislature] could rationally leave the assessment of the culpability of such an offender up to a future" parole board. (*Ibid*.)

to distinguish between the two groups at issue, the different treatment did not violate equal protection principles.

## <u>DISPOSITION</u>

The order is affirmed.