Filed 8/2/23  P. v. Parker CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F085642 |
| Plaintiff and Respondent, | (Super. Ct. No. SUF23393B) |
| v. | |
| DAVID DUANE PARKER, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  David Moranda, Judge.

Aaron J. Schecter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]  Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

In this appeal, defendant David Duane Parker challenges the trial court's denial of his request for a hearing he believes was available under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*). The court denied the *Franklin* motion because defendant was sentenced to life without the possibility of parole (LWOP), making him ineligible for a parole hearing. Defendant believes the denial of his request for a *Franklin* hearing based on his LWOP sentence constituted a violation of his right to equal protection of the law. The People disagree. We affirm the court's denial of the motion.

## PROCEDURAL SUMMARY

In 2000, a jury found appellant guilty of first degree murder (Pen. Code,[1] § 187, subd. (a); count 1), kidnapping for robbery (§ 209, subd. (b); count 2), carjacking (§ 215; count 3), and robbery (§ 211; count 4). As to the murder, the jury found true the following three special circumstances: robbery-murder (§ 190.2, subd. (a)(17)(A)), kidnapping-murder (§ 190.2, subd. (a)(17)(B)), and carjacking-murder (§ 190.2, subd. (a)(17)(L)). The trial court then sentenced appellant to LWOP for the first degree murder, and stayed the remaining sentences pursuant to section 654. At the time the crimes were committed, defendant was 22 years old.

In November 2022, defendant made a motion requesting a *Franklin* hearing to create a record showing how his youth at the time the crimes were committed contributed to the commission of his offense—information that might be useful during a possible youth offender parole hearing. When denying that request, the court stated:

> "On November 4, 2022, [defendant] filed this motion. [Defendant] has also filed an appeal and his case is currently before the Court of Appeal, Fifth Appellate District. Thus, this [c]ourt has been divested of jurisdiction. (*People v. Haynes* (1969) 270 [Cal.App.]2d 318.)

> Accordingly, the motion is DENIED."

---

[1] All further statutory references are to the Penal Code.

This appeal followed the denial of defendant's *Franklin* motion.

**DISCUSSION**[2]

The law provides for a youth offender parole hearing for persons sentenced to indeterminate life sentences with the possibility of parole if they were between the ages of 18 and 25 when they committed the offense.  However, the law does not provide for a youth offender parole hearing for a person in the same age group who was sentenced to LWOP.  Defendant is in the latter category.  Defendant contends that the discrepancy in treatment between the two groups violates equal protection principles.  The People disagree, as do we.  However, before we address the unavailability of a *Franklin* hearing in this case, we must address the trial court's conclusion it lacked jurisdiction to order such a hearing.

**I.    The Question of Jurisdiction**

The trial court specifically denied defendant's request for a *Franklin* hearing believing it was without jurisdiction since a notice of appeal had been filed by defendant in a separate matter, which was also before this court.[3]  On March 30, 2023, defendant asked this court to take judicial notice of that other appeal when resolving the issue of jurisdiction.  We grant the request for judicial notice, but only for the limited purpose of resolving the issue of jurisdiction.

In the absence of a statutory exception, once a valid notice of appeal is filed, jurisdiction vests in the appellate court until there is a determination of the appeal and the issuance of the remittitur.  (*People v. Wagner* (2009) 45 Cal.4th 1039, 1061.)  Until that time, the trial court lacks jurisdiction to issue any orders that could affect the judgment.  (*Ibid.*)  " 'The purpose of the rule divesting the lower court of jurisdiction when an appeal

---

**2**    A factual summary of the crimes committed by defendant is not necessary to the resolution of this appeal.

**3**    *People v. Parker* (August 2, 2023, F085006) [nonpub. opn.].

3

is pending " ' "is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment … by conducting other proceedings that may affect it." ' " [Citations].' " (*People v. Cress* (2023) 87 Cal.App.5th 421, 425, citing *People v. Burhop* (2021) 65 Cal.App.5th 808, 814.)

The question that must be resolved, therefore, is whether defendant could be granted the right to a *Franklin* hearing while the other appeal was pending in case No. F085006. We note, the academic answer to this question is that a grant or denial of the *Franklin* motion would not have affected the judgment or the issues presented in case No. F085006, concerning the denial of defendant's petition for resentencing under section 1172.6. However, the practical response is that under the circumstances as they existed when the trial court denied defendant's motion, defendant was not entitled to a *Franklin* hearing.

## II.     Youth Offender Parole Hearings and the *Franklin* Hearing Framework

### A.     The Applicable Law

In 2013, the Legislature enacted section 3051, effective January 1, 2014, providing a parole eligibility mechanism for juvenile offenders. (*Franklin*, *supra*, 63 Cal.4th at pp. 276–277; former § 3051; Stats. 2013, ch. 312, § 4.) Its purpose was "to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity[.]" (Stats. 2013, ch. 312, § 1.) The version of section 3051 effective on January 1, 2014, applied only to juvenile offenders sentenced to indeterminate life terms with the possibility of parole. (Former § 3051, subd. (b); Stats. 2013, ch. 312, § 4.) On its face, it did not apply to juvenile offenders sentenced to LWOP or those over age 18 at the time of the offense. (Former § 3051, subds. (a)(1), (b); Stats. 2013, ch. 312, § 4.)

4

In 2015, section 3051 was amended to extend eligibility to youthful offenders under age 23.  (Former § 3051, subds. (a)(1), (b); Stats. 2015, ch. 471, § 1.)  Then in 2017, section 3051 was amended again to extend eligibility to youthful offenders age 25 and under.  (Former § 3051, subds. (a)(1), (b); Stats. 2017, ch. 675, § 1.)

Presently, "section 3051 … requires the Board [of Parole Hearings] to conduct a 'youth offender parole hearing' during the 15th, 20th, or 25th year of a juvenile offender's incarceration.  [Citation.]  The date of the hearing depends on the offender's '[c]ontrolling offense,' which is defined as 'the offense or enhancement for which any sentencing court imposed the longest term of imprisonment.' "  (*Franklin*, *supra*, 63 Cal.4th at p. 277; § 3051, subd. (a)(2)(B).)  "A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a determinate sentence shall be eligible for release on parole at a youth offender parole hearing during the person's 15th year of incarceration"; persons sentenced to indeterminate terms of less than 25 years to life are eligible at their 20th year of incarceration; and persons sentenced to indeterminate terms of 25 years to life are eligible at their 25th year of incarceration.  (§ 3051, subd. (b)(1)–(3).)  Section 3051 does not create youth offender parole hearing eligibility for a person sentenced to a LWOP sentence.

Against this backdrop, our Supreme Court has established a procedure by which an inmate may be entitled to a separate hearing (the *Franklin* hearing) to preserve evidence that could be beneficial for a future parole hearing addressing the impact of the inmate's youth in the commission of the crime.  (*Franklin*, *supra*, 63 Cal.4th at p. 269; *In re Cook* (2019) 7 Cal.5th 439, 450; see *Cook*, at pp. 453, 458 [the proper avenue for inmates who seek to preserve youth-related evidence following a final judgment is to file a motion under section 1203.01].)  A person who cannot prove eligibility for a parole hearing in the future is not entitled to a *Franklin* hearing.  (*Cook*, at p. 458.)

## B. Equal Protection Principles

"Both the state and federal Constitutions extend to persons the equal protection of the law." (*People v. Chatman* (2018) 4 Cal.5th 277, 287.) An equal protection challenge requires a showing that the government has adopted a classification affecting two or more similarly situated groups in an unequal manner. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836.) The level of scrutiny we apply depends on the type of classification. (*Ibid.*) Statutes, such as the one in this case, neither involving a suspect class like race or national origin nor those impinging on fundamental rights, are subject to the minimum equal protection standard—rational basis review. (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)

Under the rational basis review, "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " (*People v. Turnage*, *supra*, 55 Cal.4th at p. 74.) "To successfully challenge a law on equal protection grounds, the defendant must negate ' " 'every conceivable basis' " ' on which 'the disputed statutory disparity' might be supported. [Citation.] 'If a plausible basis exists for the disparity, "[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law." ' " (*People v. Acosta* (2021) 60 Cal.App.5th 769, 778.) The majority of published case law on this issue has rejected the defendants' arguments and upheld the constitutionality of the provision. (See, e.g., *People v. Jackson* (2021) 61 Cal.App.5th 189; *Acosta*, at p. 769; *In re Williams* (2020) 57 Cal.App.5th 427.)

Rational basis review requires courts to ask two questions: (1) "whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner" and (2) "whether the challenged classification ultimately bears a rational relationship to a legitimate state purpose." (*People v. Chatman*, *supra*, 4 Cal.5th at p. 289.) "A classification in a statute is presumed rational until the

challenger shows that no rational basis for the unequal treatment is reasonably conceivable. [Citations.] The underlying rationale for a statutory classification need not have been ' " 'ever actually articulated' " ' by lawmakers, and it does not need to ' " 'be empirically substantiated.' " ' [Citation.] Nor does the logic behind a potential justification need to be persuasive or sensible—rather than simply rational." (*Ibid*.)

## III. Application of These Principles

We reject defendant's contention that those who are 18 to 25 years old when sentenced to LWOP are similarly situated to those who are 18 to 25 years old when sentenced to life with the possibility of parole for purposes of a *Franklin* hearing. Defendant's claim specifically fails because there is a rational basis for a different treatment of the two groups.

Section 3051 creates the mechanism for a youth offender parole hearing. A person sentenced to LWOP is definitionally ineligible for parole. It makes little sense to provide defendant a *Franklin* hearing, which is to provide information for a later youth offender parole hearing, when he is not eligible for parole. Of course, if that basic fact changes in the future, nothing prevents defendant from filing a new petition asking for a *Franklin* hearing.[4]

Courts also have concluded that the distinction between these two groups is rational given the level of culpability a jury must find to convict a defendant of a first degree murder with special circumstances justifying a sentence of LWOP. For instance, " '[i]t is the prerogative, indeed the duty, of the Legislature to recognize degrees of culpability when drafting a Penal Code.' " (*People v. Wilkinson*, *supra*, 33 Cal.4th at p. 840.) On that basis, many courts have rejected the claim defendant makes here. (*People v. Sands* (2021) 70 Cal.App.5th 193, 204–205; *People v. Morales* (2021)

---

[4]     Which is a possibility if the trial court grants defendant's section 1172.6 petition following a remand in *People v. Parker*, *supra*, F085006.

67 Cal.App.5th 326, 347–349; *People v. Jackson*, *supra*, 61 Cal.App.5th at pp. 199–200; *People v. Acosta*, *supra*, 60 Cal.App.5th at pp. 780–781; *In re Williams*, *supra*, 57 Cal.App.5th at pp. 433–436.)  We join these courts.

However, we recognize that one court has found the different treatment at issue here violates equal protection principles.  (*People v. Hardin* (2022) 84 Cal.App.5th 273, review granted Jan. 11, 2023, S277487.)  The *Hardin* court stated that "[v]iewed in light of section 3051's intended purpose of permitting a determination whether a person who committed a serious or violent crime between the age of 18 and 25 has sufficiently matured and outgrown the youthful impulses that led to the commission of the offense, an individual serving a parole-eligible life sentence and a person who committed an offense at the same age serving a sentence of life without parole are similarly situated."  (*Hardin*, at p. 287.)  It then concluded that "if … the goal of section 3051 was to apply the … youth-related mitigating factors to young adults up to the age of 26 in light of neuroscience research that demonstrated the human brain continues to develop into a person's mid-20's, and thus to permit youth offenders a meaningful opportunity for parole if they demonstrate increased maturity and impulse control, then for that purpose there is no plausible basis for distinguishing between same-age offenders based solely on the crime they committed."  (*Hardin*, at p. 288.)

As discussed above, we conclude that the extreme level of culpability required for a LWOP sentence provides a rational basis for the distinction drawn between the two groups.  We therefore disagree with *Hardin* and agree with the majority of courts in finding that a rational basis exists to distinguish between offenders aged 18 to 25 who are sentenced to life with the possibility of parole and offenders aged 18 to 25 who are sentenced to LWOP with respect to granting a request for a *Franklin* hearing.

8

Because defendant was not eligible for a *Franklin* hearing, the refusal of the trial court to act on the petition, citing a lack of jurisdiction to act, resulted in no prejudice to defendant.

## **DISPOSITION**

The order is affirmed.